TAXPAYERS LOBBY OF INDIANA, INC. ET AL. *v.* ROBERT D. ORR, AS LIEUTENANT GOVERNOR OF THE STATE OF INDIANA, AND BY VIRTUE OF SAID OFFICE, PRESIDENT OF THE SENATE ET AL.

[No. 374S67. Filed June 6, 1974.]

94

*Frank E. Spencer,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Sheldon A. Breskow, John H. Meyers,* Deputy Attorneys General, for appellee.

PRENTICE, J.—This case arose out of the passage of the House Enrolled Act No. 1143 by the first regular session of the 98th General Assembly, as an integral part of the so-called "tax package" enacted to restructure the Indiana tax laws. The Act, now Public Law No. 47, Acts of 1973, amends the Gross Income Tax Act of 1933 and is entitled, "An Act to Amend IC 1971, 6-2-1 concerning the gross income, sales and use tax." The effect of the aforementioned act is to increase

the rate of the state sales tax from 2% to 4%, as well as to create a new exemption from the tax for sales of food for human consumption. It was passed by both houses of the General Assembly on April 13, 1973, was signed by the presiding officers of the respective houses and was, on April 24, 1973, approved by the Governor and became law. Following the passage of the aforesaid act, the plaintiffs filed their complaint in the Superior Court of Marion County, asking that court to declare the act unconstitutional, to enjoin the defendants from enforcing the act and to require the Lieutenant Governor, as President of the Senate, to remove his authenticating signature.

Subsequent to the filing of the initial complaint, the plaintiffs filed a second paragraph of complaint which raised additional allegations concerning the validity of the act. Taking the two paragraphs of the complaint together, the plaintiffs' allegations can be summarized into three basic contentions.

I. The new food exemption under the sales tax, contained in § 3 of the act, is unconstitutional on the grounds that: (a) it does not contain workable standards of classification and requires an invalid exercise of legislative power of the Department of Revenue in order to work; and (b) it constitutes an invalid legislative classification, which grants special privileges and immunities and is not of general and uniform operation throughout the state.

II. As an amendatory act, it violates Article IV, § 19, of the Indiana Constitution, in that it does not adequately identify the original act being amended and does not publish, at full length, the sections of the original act being amended.

III. The act was not enacted in compliance with legislative procedural provisions in the Indiana Constitution respecting the reading of bills, the voting thereon and the duration of legislative sessions.

Both sides presented witnesses, whose testimony dealt primarily with the workability of the new food exemption

from the sales tax provisions and with the legislative procedure followed in the enactment of said act. After hearing the evidence and the arguments presented, the Court entered special findings of facts and conclusions of law and its judgment thereon upholding the act in all respects. The plaintiffs' motion to correct errors was overruled, and they initiated this appeal.

\* \* \*

ISSUE I. Before proceeding to a consideration of the specific issues involved, several basic principles which govern all constitutional litigation should be mentioned. The trial court properly recognized that whether a statute, particularly a tax statute, is wise or expedient is for the legislature decide, not the courts. (Conclusion of Law No. 1) ; *Lurie* v. *City of Indianapolis* (1964), 245 Ind. 457, 198 N.E.2d 755. An act of the legislature enjoys a strong presumption of constitutionality. *Roeschlein* v. *Thomas* (1972), 258 Ind. 16, 280 N.E.2d 581. A court may not hold an act unconstitutional except on the clearest showing of invalidity. *State* v. *Clark* (1966), 247 Ind. 490, 217 N.E.2d 588. All doubts must be resolved in favor of the statute. *Wright-Bachman, Inc.* v. *Hodnett* (1956), 235 Ind. 307, 133 N.E.2d 713. Finally, a statute should be construed to sustain its validity, not unreasonably or in a manner resulting in its invalidity. *Evansville-Vanderburgh Levee Authority Dist.* v. *Kamp* (1960), 240 Ind. 659, 168 N.E.2d 208.

Section 3 of the act creates a new exemption from the sales tax for "sales of food for human consumption." It is provided that the term "food for human consumption" shall include a number of listed items and products. It is further provided that the term "food for human consumption" shall not include a number of other items and products which are also listed. The plaintiffs contend that such provisions are unconstitutional on the grounds that: (a) it does not contain workable standards of classification and necessitates an unconstitutional exercise of legislative power by the

Indiana Department of Revenue in violation of Article IV, Section 1, of the Indiana Constitution; and (b) it is invalid legislative classification, in that it grants special privileges or immunities and is not of general and uniform operation throughout the state in violation of Article I, Section 23, and Article IV, Section 23, of the Indiana Constitution.

Considering the latter contention first, the plaintiffs' basic objection to the so-called food exemption is that the exemption is "arbitrary and devoid of any apparent rationality." The plaintiffs' point to the fact that milk and egg products are exempt but soft drinks are taxed, food sold for consumption off the premises is exempt but food sold for consumption on the premises is taxed, etc. The sales tax, however, is an excise tax and the General Assembly has a great deal of discretion in classifying for purposes of an excise tax. As this Court stated in *Lutz* v. *Arnold* (1935), 208 Ind. 480, 193 N.E. 840, in which the Court upheld the intangibles tax law as a proper classification:

> "Having determined that the tax imposed is an excise tax, then, under a uniform holding of the courts, the state may classify for the purpose of imposing an excise tax. And as said in the case of Baldwin v. State (1923), 194 Ind. 303, 141 N.E. 343: 'It is primarily for the Legislature to determine the classification, *and is never a judicial question unless the classification under no circumstances can be viewed as reasonable.*" [Emphasis added] 193 N.E. at 847.

Similarly, in *Miles* v. *Department of Treasury* (1935), 209 Ind. 172, 199 N.E. 372, *appeal dismissed,* (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372, the Indiana Supreme Court upheld certain classifications, saying "[t]he legislature has full power to select one class for taxation to the exclusion of another, and to tax different classes at different rates." 199 N.E. at 379.

The same principles have been applied to the creation of exemptions under the sales tax law. In *Welsh* v. *Sells* (1963), 244 Ind. 423, 192 N.E.2d 753, on rehearing, 244 Ind. 423,

193 N.E.2d 359, the Supreme Court recognized the discretion which the legislature has in creating such exemptions, as well as specifically recognizing the rationality of exempting certain food items from the sales tax. The Court, quoting from a State Tax and Financing Policy Commission Report, said:

> " 'All sales tax laws exempt or exclude some retail sales. The reasons for this treatment vary. Goods used in the manufacturing process are exempt entirely or partially by all state laws to avoid tax pyramiding, that is, the situation where a tax is levied on a tax and the result is a retail price increase greater than the amount of the tax. The same rationale presumably has led to the exemption of such farm supplies as feed, seed, and fertilizer. Several states also exempt industrial machinery and fuel, and some states extend the exemption to farm machinery.
>
> " '*To mitigate the regressivity of the sales tax, "necessities" are frequently exempted, principally groceries, medicine, schoolbooks and clothing. * * *'*
>
> " * * * * * *
>
> "The legislature has latitude in determining classifications for taxation as long as it is based upon some reason connected with the subject matter. [Citations omitted.]" [Emphasis added] 192 N.E.2d at 759-60.

The plaintiffs' assertion that the food classification is unreasonable is based on an apparent misunderstanding as to the nature and purpose of the food exemption. A comparison of the list in the Act of food items included in the exemption with the list of food items excluded from the exemption reveals that the legislature was not attempting to exempt from the sales tax everything which might be called "food." Rather it basically exempted food necessities and staples purchased for consumption off the premises where sold. The purpose of such an exemption for "groceries" is to mitigate the regressivity of the sales tax, as the Supreme Court recognized in *Welsh* v. *Sells, supra.* That purpose is unquestionably a proper one for the legislature to achieve, and a food exemption has been recognized as

one means of achieving that purpose. A leading authority on sales tax states:

> *"Evaluation of food exemption.* Food exemption without question accomplishes the objective of lessening regressivity and the absolute burden on the poor, because such a high percentage of family expenditures in the lowest income groups is made for food. This result has been demonstrated empirically in a number of studies and need not be reviewed here. These studies uniformly show that a sales tax with food taxed is regressive; with food exempt, more or less proportional to income except at the lowest income level. Of perhaps even greater importance is the importance of the exemption in reducing the absolute burden on the poor. Food exemption also lessens discrimination against large families compared to smaller ones." Due, *State and Local Sales Taxation* (1971) at 66.

In light of the purpose of the food exemption, the Act's inclusion and exclusion of various food items under the exemption is rational and reasonable. The items excluded from the exemption are basically nonstaple food items or food served for purposes of "eating out." In continuing to tax those items while exempting groceries (i.e., basically food necessities), the legislature has followed and adopted a line of demarcation common in the sales tax laws of other states. If nonstaple items were also exempted from the sales tax, their exemption would not contribute substantially to a decrease in the regressivity of the tax, but it would decrease unnecessarily the revenue derived from the sales tax. Therefore, in light of the purpose of the food exemption, the exclusion of nonstaple items from the exemption is entirely understandable and reasonable.

Although it is true, as the plaintiffs contend, that the effect of the exemption is to exempt certain food items depending on the nature of the transaction, that fact does not invalidate the exemption. The sales tax is, in fact, a tax imposed upon a "transaction," namely, "selling at retail." IC 1971, 6-2-1-37, Burns Ind. Ann. Stat. § 64-2651. The sales tax law has always contained exemptions based

not only on the identity of the tangible personal property sold, e.g., newspapers, but also on the nature of the transaction, e.g., a variety of exemptions for property sold for use by the purchaser other than ultimate consumption. The law drew fine distinctions. Although newspapers were not taxable, magazines were. Under the so-called "farmers" exemption, which is an exemption based on the nature of the transaction and which was specifically upheld in *Welsh* v. *Sells, supra,* fertilizer purchased for a home garden is taxable but fertilizer purchased for truck garden is exempt. It is clear, therefore, that the provisions of the food exemption causing taxability to depend on the identity of an item, e.g., candy, or upon the nature of the transaction, e.g., restaurant meals, are not different in kind from other exemptions in the sales tax law. The food exemption provision is not arbitrary or unreasonable, and it is not invalid under Article I, Section 23, or Article IV, Section 23, of the Indiana Constitution.

Nor is the food exemption invalid as being unworkable or an invalid delegation of legislative power. The trial court properly found that the food exemption is workable. The trial court also properly concluded that the exemption is being executed without the invalid exercise of legislative action on the part of the Department of Revenue.

The evidence regarding the workability of the food exemption was conflicting. One witness for the defendants testified that very few problems had been encountered in the implementation of the food exemption by retail stores. The witness testified that of the approximately ten thousand items carried in his store, only a few dozen had presented interpretive problems. In addition, one of the plaintiffs testified that he, as a purchaser, had had no trouble determining which food items were exempt.

The mere fact that the Act may require some interpretation does not invalidate the Act, nor does it mean that the Act requires an unconstitutional exercise of legisla-

tive power by the Department of Revenue in order to work. Tax laws by their very nature are complicated, and they are rarely capable of being drafted with sufficient precision to avoid all interpretative problems. Dozens of cases have been decided under our gross income tax laws— literally thousands under the federal income tax laws. But these characteristics do not invalidate a tax law. The language of the Supreme Court in *Miles* v. *Department of Treasury, supra,* is particularly pertinent.

> "The act as a whole is clear, and we see no reason why it is not workable. The suggestion that it is so vague as to be impossible of interpretation, and therefore unconstitutional, does not appeal to us as worthy of serious consideration. There are numerous provisions for the operation and enforcement of the act. It may develop that some of these need construction or interpretation, as is often the case with a comprehensive tax law, but as we see it, could not conceivably require that the entire act be held unconstitutional." 199 N.E. at 382.

Because tax laws often require interpretation, the Supreme Court has recognized that some discretion must be conferred upon an administrative body in the enforcement of tax laws. In *Dunn* v. *City of Indianapolis* (1935), 208 Ind. 630, 196 N.E. 528, the Supreme Court upheld a statute authorizing the state board of tax commissioners to approve or reduce municipal tax levies, saying:

> "Under our legislative system, the General Assembly is in regular session for a period of only sixty-one days in a term of two years. Upon the question of legislation providing for taxation, as well as many other subjects, it is apparent that legislation cannot be enacted in detail, so as to apply to all conditions in the various subdivisions and municipalities of the state, and therefore some discretion must be lodged in some official board or commission to exercise judgment and discretion as to the application of the Tax Law pursuant to the standard designated by the General Assembly. * * *." 196 N.E. at 532.

The same rationale has been applied to the administration of the sales tax by the Department of Revenue. In *Welsh* v.

*Sells, supra,* the Supreme Court upheld a provision authoriz- ing the Department to issue exemption certificates, even though that provision necessarily required the Department to interpret the exemption provisions in the statute. The Court said:

"* * * [T]he fact that the Act is not crystal-clear does not make it unconstitutional. * * *."

The only limitation on the delegation of authority to administrative bodies is that reasonable standards must be established to guide the administrative body. The standards, however, only need to be as specific as the circumstances permit, considering the purpose to be accomplished by the statute. *Orbison* v. *Welsh, Governor, et al.* (1962), 242 Ind. 385, 179 N.E.2d 727; *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 172 N.E.2d 67. The standards provided in the Act to guide the administration of the food exemption meet that requirement. The Act contains two lists, detailing food items which are included in the exemption and those which are excluded. Considering that some stores carry as many as ten thousand different food items (testimony of Robert Bartels, R. 348), the plaintiffs' criticism of the "limited" lists set forth in the Act is unwarranted.

A finding, which is in effect a negative finding against the plaintiff, may be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding. *Pepka* v. *Branch* (1973), 155 Ind. App. 637, 294 N.E.2d 141. There was substantial evidence given that the food exemption is workable, requires no invalid exercise of legislative power and grants no special privileges or immunities. We find no constitutional infirmity under either Section 1 or Section 23 of Article IV or under Section 23 of Article I of our state constitution.

ISSUE II. The second issue challenges the effect, if not the validity, of the Indiana Code of 1971. It is the plaintiffs'

position that the references in the title and text of the Act, being to the Code of 1971, did not satisfy the identification requirements of Article IV, Section 19, of the Constitution of Indiana, which is as follows:

"§ 19. Subject matter and title—Amendments.—Every act, amendatory act or amendment of a code shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, amendatory act or amendment of a code, which shall not be expressed in the title, such act, amendatory act or amendment of a code shall be void only as to so much thereof as shall not be expressed in the title. The requirements of this paragraph shall not apply to original enactments of codifications of laws.

"Every amendatory act and every amendment of a code shall identify the original act or code, as last amended, and the sections or subsections amended shall be set forth and published at full length. The identification required by this paragraph may be made by citation reference. [As amended November 8, 1960.]"

Appellants cite us to *State ex rel. Pearcy* v. *Criminal Court of Marion County* (1971), 257 Ind. 178, 274 N.E.2d 519, wherein we stated that the Code of 1971 was nothing more than an official comprehensive compilation of all the legislative acts. From this, they have concluded that the citation to the Code may not be used to satisfy the identification requirements of paragraph 2 Article IV, § 19, of the Constitution. We did not so hold. The holding in that case was that the statute under consideration did not conform to the requirements of paragraph 1 of that Article and Section. Although dictum in the case, we stated that the identification requirements of Article IV, § 19, were satisfied by reference to the compilation (Code), and we now so hold. The purpose of the Code was to organize the viable acts of this state, which has been done at great expense and effort. The purpose of the identification requirement of Article IV, § 19, is to clarify amending acts and assure that their effect is understood. To bring the viable acts into one

comprehensive compilation has greatly simplified the task of meeting the identification requirements. The "Code," as the compilation is called, is an excellent legislative tool and furthers the purpose of the constitutional requirement by making such identification easier and accurate.

There is also some indication that appellants question the constitutionality of the act for failure to comply with the requirement of Article IV, § 19, which provides that in amending legislation, the section or subsection amended shall be set forth and published at full length. If so, that question has been long settled. Article IV, § 19, of our Constitution was amended in 1960. The substance of former Article IV, § 21, was incorporated therein, the earlier provision being: "No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length." This "full length" requirement has been held to require only that the revised or amended act shall be complete within itself, i.e., by setting out the act or section as amended and not to require that the act or section being revised or amended be set forth in its original form. *Bush* v. *The City of Indianapolis* (1889), 120 Ind. 476, 22 N.E. 422; *Greencastle Southern Turnpike Co.* v. *The State, on the relation of Malot* (1867), 28 Ind. 382.

ISSUE III. Several issues are here grouped under the central theme of unconstitutionality by reason of improper legislative procedures. With respect to this theme, we are confronted at the threshold by the "Enrolled Act Rule." The act in question bears the signatures of the presiding officers of the General Assembly, and the courts of this state have consistently held for over one hundred years that those signatures conclusively establish the due passage of an act. Our courts do not go behind or receive evidence going behind an enrolled act in order to determine if the General Assembly did, in fact, comply with the constitutional procedural requirements. This rule was first recog-

nized in *Evans, Auditor of State* v. *Browne* (1869), 30 Ind. 514, and we have followed it without exception through *Roeschlein* v. *Thomas* (1972), 258 Ind. 16, 280 N.E.2d 581.[1] In *State ex rel. Cline* v. *Schricker* (1949), 228 Ind. 41, 47, 88 N.E.2d 746, 748 we said: "* * * This is a rule of substantive law and not of evidence, and there is no pleading known to the law by which the existence of an act can be put in issue and tried as a question of fact."

Plaintiffs have cited a number of cases from other jurisdictions in avoidance of the "Enrolled Act Rule." Such cases are not persuasive with us. They are from jurisdictions following the "Journal Entry Rule," which holds that the courts may properly look to legislative journals to determine if constitutional procedural requirements were met. In *Evans, Auditor of State* v. *Browne, supra,* we expressly rejected that rule as an "essentially mischievous doctrine."

Plaintiffs have also cited two Indiana cases in avoidance of the "Enrolled Act Rule," namely *State ex rel. Mass Transportation Authority, etc.* v. *Indiana Revenue Board et al.* (1969), 144 Ind. App. 63, 242 N.E.2d 642 and *State v. Clark* (1966), 247 Ind. 490, 217 N.E.2d 588. Neither case, however, will support their position. *State ex rel. Mass Transportation Authority, etc.* v. *Indiana Revenue Board et al., supra,* rejected the theory that a "pocket veto" by the Governor was a constitutionally permissible veto, notwithstanding that the practice was one of long standing. However, although the Court in that case delved into the legislative activities or cir-

---

1. *Bender* v. *State* (1876), 53 Ind. 254; *Board of Comm'rs. of Madison County* v. *Burford* (1883), 93 Ind. 383; *Hovey, Governor* v. *State ex rel. Carson* (1889), 119 Ind. 395, 21 N.E. 21; *State ex rel. Board of Comm'rs. of Benton County* v. *Boice* (1895), 140 Ind. 506, 40 N.E. 113; *Western Union Tel. Co.* v. *Taggart* (1895), 141 Ind. 281, 40 N.E. 1051; *Lewis* v. *State* (1897), 148 Ind. 346, 47 N.E. 675; *State ex rel. Colbert* v. *Wheeler* (1909), 172 Ind. 578, 89 N.E. 1; *State ex rel. Mayr* v. *Marion Circuit Court* (1931), 202 Ind. 501, 176 N.E. 626; *State ex rel. Cline* v. *Schricker* (1949), 228 Ind. 41, 88 N.E.2d 746; *Mogilner* v. *Metropolitan Plan Comm'n.* (1957), 236 Ind. 298, 140 N.E.2d 220; and *Welsh* v. *Sells* (1963), 244 Ind. 423, 192 N.E.2d 753, on rehearing, 244 Ind. 423, 193 N.E.2d 359.

cumstances transpiring prior to affixing the authenticating signatures, the case actually was concerned with what transpired or did not transpire thereafter. In no sense can it be considered an erosion of the "Enrolled Act Rule."

The case of *State* v. *Clark, supra,* contains some unfortunate dicta indicating that a *positive* showing from the records of the General Assembly might refute the certification by the presiding officers. We repudiate this statement as suggestive of a doctrine that this Court cannot follow.

We find no error, and the judgment of the trial court is affirmed.

Arterburn, C.J. and DeBruler, Givan and Hunter, JJ. concur.

NOTE.—Reported at 311 N.E.2d 814.