INDIANA AERONAUTICS COMMISSION *v.* AMBASSADAIR, INC., AND FOUR WINDS, INC.

[No. 1276S429. Filed October 31, 1977. Rehearing denied December 22, 1977.]

*Theodore L. Sendak,* Attorney General, *William E. Daily,* Assistant Attorney General, for appellant.

*Edgar H. Lamb,* of Indianapolis, for appellee Ambassadair, Inc., *James P. Quinn,* of Indianapolis, for appellee Four Winds, Inc.

DEBRULER, J.—Four Winds, Inc. and Ambassadair, Inc., appellees, two air travel clubs, sought declaratory and injunctive relief against payment of the tax upon their aircraft provided for by the Indiana Aircraft Excise Tax Act of 1975. Ind. Code §§ 6-6-6.5-1 through 22 (Burns 1976 Supp.). The trial court granted judgment for these taxpayers and the Indiana Aeronautics Commission appealed.

We deal in this appeal with the protection which may be afforded aircraft owners by the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 12 and 23 of the Indiana Constitution, against the exaction of the tax on aircraft. This statute removes the property tax burden from aircraft and imposes another tax burden on them. This burden is distributed among aircraft owners on the basis of the age and maximum landing weight of their planes. These criteria function as major factors in a formula for calculating the tax charge, which formula is set forth in Ind. Code § 6-6-6.5-13 (a) and (b) as follows:

"(a) As the basis for measuring the tax imposed by this chapter [6-6-6.5-1—6-6-6.5-22] the commission shall classify every taxable aircraft in its proper class according to the following classification plan:

CLASS | DESCRIPTION
--- | ---
A | Piston-driven, non-pressurized aircraft
B | All other aircraft

(b) The tax imposed under this chapter is based on the age, class and maximum landing weight of the taxable

aircraft. Except as provided in subsection (c) of this section, the amount of tax imposed on the taxable aircraft is based on the following table:

Aircraft registered in 1976

| Age | Class A | Class B |
|-----|---------|---------|
| 0-4 Years | $.08/lb. | $.18/lb. |
| 5-8 Years | $.07/lb. | $.16/lb. |
| 9-12 Years | $.06/lb. | $.14/lb. |
| 13-16 Years | $.05/lb. | $.12/lb. |
| 16 and over | $.04/lb. | $.10/lb. |

Aircraft registered in 1977

\* \* \*

Aircraft registered in 1978

\* \* \*

Aircraft registered in 1979 or thereafter

| Age | Class A | Class B |
|-----|---------|---------|
| 0-4 Years | $.04/lb. | $.09/lb. |
| 5-8 Years | $.03½/lb. | $.08/lb. |
| 9-12 Years | $.03/lb. | $.07/lb. |
| 13-16 Years | $.02½/lb. | $.06/lb. |
| 16 and over | $.02/lb. | $.05/lb." |

According to this provision, after the class selection is made according to subsection (a), the tax charge on a plane is determined by multiplying a stated money rate, which diminishes as the age of an aircraft increases, by the maximum landing weight of the plane measured in pounds. Other provisions of the statute require annual registration of taxable aircraft and the return of tax dollars collected to the local taxing districts in which the aircraft are usually located when not in operation. Ind. Code §§ 6-6-6.5-3 and 6-6-6.5-21. Also pertinent to this appeal are the provisions of the act which completely exempt regularly scheduled airlines such as Eastern and TWA, Ind. Code § 6-6-6.5-9(f), and those which grant a temporary three year tax reduction in the case of aircraft assessed for 1974 property taxes payable in 1975. Ind. Code § 6-6-6.5-13(c). The trial court concluded that the statute could not be applied to appellees consistent with the requirements of equal protection and due process.

The special findings of the trial court upon which his conclusions were reached show that Four Winds, Inc., owns a 1962 Convair 880 which has a maximum landing weight of 150,000 pounds and a value of $225,000, and that Ambassadair, Inc., owns a 1959 Boeing 720 which has a maximum landing weight of 175,000 pounds and a value of $250,000. The Convair was brought to Indiana in October, 1975, and the Boeing was brought here in September, 1973. The tax charge on the two planes for 1976 would be about $18,000 each. If the planes were subject to the property tax, and if the assessed value for property tax purposes were the same as their value found by the trial court, the property tax charge would be about one-half of this charge for 1976. A Learjet, having a value of from between $400,000 and $1,000,000 and a maximum landing weight of 12,000 pounds would pay about $1,400. The trial court interpreted the statute as ignoring the actual value of aircraft in its formula for determining this charge. The trial court further found that the excise tax charge for 1976 against appellees was so large as to be confiscatory and an undue burden and hardship on them.

The manner in which the findings, most of which are merely descriptive of the legislative arrangements in the statute, were utilized or deemed essential to the equal protection determination of the trial court is not clear. In spite of the difficulty which this lack of clarity poses to our appellate function, we believe that the classification of aircraft by age and weight, and the classifications of craft for total and partial exemption were central to that determination and we proceed to test them by appropriate constitutional standards.

In order to place the equal protection claim in this case upon a proper footing and to dispel some notion implicit in arguments of counsel, it is important to note and emphasize that we deal here with the limitation imposed by Article 1, Section 23, of the Indiana Constitution and the Equal Protection and Due Process Clauses of the Fourteenth Amendment upon the taxing power of this

State. They do not impose any specific limitation upon the power of Indiana to classify persons and things for tax purposes other than to prohibit arbitrary classifications. They do not require this State to maintain any particular scheme of property or excise taxes, or to adopt any particular classifications for tax purposes. For example, and apropos here, the commands of equal protection would not mandate Indiana to maintain the rigid requirements of equality in taxing property mandated by Article 10, Section 1 of the Indiana Constitution, or to adopt any particular bases upon which to calculate a tax charge. *Puget Sound Power & Light Co.* v. *King County,* (1924) 264 U.S. 22, 44 S.Ct. 261, 68 L.Ed. 541; *Eavey Company* v. *Department of Treasury,* (1939) 216 Ind. 255, 24 N.E.2d 268; *Lutz* v. *Arnold,* (1935) 208 Ind. 480, 193 N.E. 840. In *Bell's Gap Railroad Co.* v. *Pennsylvania,* (1890) 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, in words often quoted, the Supreme Court of the United States said:

> "The provision in the Fourteenth Amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways.
>
> \* \* \*
>
> We think that we are safe in saying that the Fourteenth Amendment was not intended to compel the state to adopt an iron rule of equal taxation."

And in *Allied Stores of Ohio, Inc.* v. *Bowers,* (1959) 358 U.S. 522, 526-27, 79 S.Ct. 437, 440-41, 3 L.Ed.2d 480, that Court stated:

> "Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not re-

quired to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value."

The Court then went on to state the standard to be applied in testing state tax legislation for equal protection purposes:

"But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' " (Citations omitted.) 358 U.S. at 527, 79 S.Ct. at 441.

Thus, under these decisions and those hereafter cited in which the traditional test of equal protection is appropriate, the Equal Protection Clause neither condemns nor approves specific criteria for tax classifications in the abstract. It is only in the context of a particular statute that classification and the criteria which define them can be judged against the equal protection clauses. In view of this, the statute under consideration here is not invalid as a denial of equal protection simply because it utilizes the criteria of age and maximum landing weight, or simply because it may not utilize value, as none of these three criteria are required or rejected, per se.

In the court below appellees' successful equal protection claim was based primarily upon the contention that the classification of aircraft by age and maximum landing weight for the purposes of determining this tax charge, as applied to their aircraft, resulted in an invidious discrimination. Appellees' aircraft are old, and have relatively small market values and have very great maximum landing weights. As a consequence the charges on their craft are very high, and are in fact higher than the charges on lighter and more valuable aircraft. The defects identified by appellees in this legislative arrangement stem from the manner in which it deals with

the "value" of aircraft. On the one hand appellees have claimed that the arrangement impermissibly ignores value altogether in setting the tax charge. Alternatively it has also been argued that the purpose of the statute is to base the tax charge solely on "value", and that age and maximum landing weight are not rationally suited for this purpose. With regard to this latter posited legislative objective, the chairperson of the appellant Commission testified that prior to, and while acting as such chairperson, he had helped draft this very statute and had guided it through the legislative processes culminating in its enactment. He stated that the drafters had not given consideration to a use factor, such as the actual number of take-offs and landings which a craft might make, and that they believed that the age and weight criteria were the best way of determining "taxable value". He also described how the Legislature "felt" about the tax formula and other provisions. Appellees rely heavily on this evidence. This type of evidence may be relevant and useful in determining legislative purpose in a case such as this, however, it does not bind the court. Even in the face of such testimony, a court must go ahead and make an independent determination of whether any reasonably conceivable purpose exists which would support the constitutionality of the classification employed. *Dandridge* v. *Williams,* (1970) 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, and authorities therein cited. The presumption of constitutionality and the regard which courts must maintain for their limited role in judging the constitutionality of statutes require us to go beyond what would be necessary for a determination of legislative intent for purposes of making a proper legal application of a statute.

The general character of the act would indicate that its overall objective is to raise revenues to support airports and governmental services rendered to operational aircraft, and to distribute the tax burden to aircraft owners. The tax only applies to aircraft which the owner intends to fly. The tax dollars collected are returned to the taxing districts in

which the aircraft are kept when not in operation, or in other words, where airports are maintained.

Maximum landing weight identifies the maximum weight at which a plane can safely take off and land. This term would identify the lift which the power of the engines and the structural design of the body are capable of generating. Thus, one might reasonably believe that the maximum landing weight of an aircraft increases in direct proportion to increases in the power of the engines and the area of those parts of the body designed to create lift. Larger aircraft require greater space in which to maneuver, to park, to load, and to unload. The larger an aircraft is, the more likely it is to require assistance in safely maneuvering on the ground and in the air. It calls for greater fire and police protection. Maximum landing weight would also be a primary determinant of the force applied by an aircraft to runways and aprons of any airport it was using and thus of the degree to which it participates in the deterioration of those facilities. These are but examples of the specific characteristics of aircraft and the airport facilities required by them which the term "maximum landing weight" subsume.

The criterion of "age" in this legislative arrangement also exerts its influence in the determination of the charge. Its influence is much less than that of maximum landing weight. Under this criterion the rate per pound of maximum landing weight falls as the age of the craft increases. Age is obviously a concession to value and usefulness. Obviously, the older an aircraft becomes, the lower its dollar value is likely to fall. And as well one may reasonably believe that the usefulness of an aircraft diminishes as it grows older. It would become less able to satisfy the expectancies of passengers. The zones in which it could be relied upon to operate safely would tend to diminish. An older aircraft is likely to be regarded as less reliable, and therefore its use may reasonably be expected to diminish. Ind. Code § 6-6-6.5-22 would appear to make further

concessions to property-type concepts. In pertinent part, that provision reads:

> "The excise tax imposed by this chapter is hereby determined to be equivalent to an average property tax rate of nine dollars ($9.00) on each one hundred dollars ($100) taxable value. . . ."

We are faced here with indications of legislative objective which do not all point in the same direction. However, they appear to us to reasonably support the conclusion that the Legislature intended to distribute this tax burden among aircraft owners on the basis of the special governmental facilities and services upon which they may reasonably be expected to call and which they may reasonably be expected to receive. This is the dominant objective, however, from the exemption afforded aircraft from the property tax and other indications, one must agree that property concepts are present here and are likewise being served. But in our opinion the form in which those concepts are present and the manner in which they are served does not alter the essential object of the act as we view it for constitutional purposes.

We reject the conclusions of the appellees that the Legislature either intended to totally ignore "value" in its formula, or that it indeed selected value as the sole underlying basis for distributing the burden of this tax.

According to the testimony at trial and the briefs, at least eleven states utilize the criterion of weight in imposing registration fees on aircraft based in their borders. Some of these fees amount to several thousands of dollars per year. There is therefore nothing unusual or suspicious about its use in the statute before us. In using this criterion in determining legislative objective, we pointed out the characteristics of aircraft and the facilities they require which are delineated by maximum landing weight. The larger an aircraft is the more airport it requires for safe operation. This tax is imposed on craft which the owners intend

to operate. Maximum landing weight would be a reasonable index of the extent to which an aircraft would participate in the deterioration of runways and aprons. It would define the area of the runways and aprons which an aircraft would use in taking off and landing, maneuvering on the ground and parking. The larger the load capacity of an aircraft, the more it will call upon airport facilities for handling and storing cargo and for providing for the safe and convenient movement of passengers. Traffic problems in and around the area of the airport are undoubtedly exacerbated by the presence of larger aircraft. Larger aircraft require more fuel and therefore the storage of greater amounts of fuel at the airport. The noise and vibrations which more powerful aircraft generate play a role in determining construction specifications and costs for buildings in and about the airport. We have already pointed out the criterion of age has a degree of pertinence to the use which a plane may be expected to make of airport facilities and airways. The likelihood that older aircraft are regarded as less reliable will work a diminution of their actual use. Age works a reduction in the tax charge in part because the plan is not expected to make use of public facilities as much as newer aircraft. Upon these considerations, and under our duty to accede to facts which may reasonably be conceived and which support the reasonableness of the classification, we find that the age-weight formula is defensible and an apt index of the extent to which an aircraft may reasonably be expected to call upon governmental facilities and services provided the aviation community.

As has been previously pointed out, equal protection does not require "an iron rule of equality" or the maintenance of "precise, scientific uniformity with reference to composition, use or value." *Allied Stores of Ohio, Inc.* v. *Bowers, supra.* It is not significant from a constitutional point of view that counsel or the court may believe that there are more appropriate criteria for this legislative purpose. It is enough that this classification fur-

ther a legitimate state interest. Under the circumstances here we need not examine the arguments made by appellant, because we are satisfied that this classification is reasonable and does not constitute a denial of equal protection.

In his findings, the trial court focused upon the special benefits granted by Ind. Code § 6-6-6.5-13(c). That proviso provided:

> "(c) If a taxable aircraft was assessed under IC 1971, 6-1 [6-1-1-1—6-1-66-8] for 1974 property taxes payable in 1975, the annual excise tax imposed on that aircraft under this chapter for 1976, 1977, or 1978 equals the lesser of:
>
> (1) the 1974 property taxes so assessed against the taxable aircraft; or
>
> (2) the annual excise tax computed under subsection (b) of this section."

He also mentioned the existence of the exemption provided regularly scheduled airlines in Ind. Code § 6-6-6.5-9(f). It is not clear what part these two classifications played in the reasoning processes by which the trial court arrived at his conclusions of law and judgment, if any. Partial and complete categorical exemptions of this sort are within the taxing power of states and often upheld against equal protection challenges. *Carmichael* v. *Southern Coal & Coke Co.*, (1937) 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245; *Taxpayer's Lobby* v. *Orr*, (1974) 262 Ind. 92, 311 N.E.2d 814; *Kelly* v. *Finney*, (1934) 207 Ind. 557, 194 N.E. 157; *State ex rel. Lewis* v. *Smith*, (1902) 158 Ind. 543, 63 N.E. 25, 63 L.R.A. 116. In the *Carmichael* case, the Supreme Court said:

> "A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is a conceivable state of facts which would support it." 301 U.S. at 509, 57 S.Ct. at 872.

The first exemption above would appear to apply to persons whose aircraft were assessed in 1974 and who are applying

for registration of those same aircraft in 1976. It would be reasonable to believe that those same aircraft had been assessed in 1975 as well, and that the string of assessments had created in the owners of such aircraft a legal interest in paying a particular amount of property tax on their planes. The object of this exemption appears to be to give recognition to the interests of taxpayers arising from actual assessments of their planes during the period of transition from the property tax to the new tax, and the distinctions made in identifying the taxpayers entitled to the benefit bestowed appear to be rationally based and well within the discretion of the Legislature. The looseness with which the benefit and the class are defined does not make this provision invalid. *Gafill* v. *Bracken, Auditor,* (1924) 195 Ind. 551, 145 N.E. 312.

The decision of the Legislature manifest in the total exemption granted regularly scheduled airlines simply suggests that the State wishes to avoid discouraging airlines engaged in providing regular passenger services to the public. This is a legitimate interest of the State which is furthered by the exemption granted. *Kahn* v. *Shevin,* (1974) 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189; *Lehnhausen* v. *Lake Shore Auto Parts Co.,* (1973), 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351; *Madden* v. *Kentucky,* (1940) 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590.

We conclude that the great deference given to tax legislation and the classifications they may employ by the Fourteenth Amendment and Article 1, Section 23 of the Indiana Constitution dictates that this statute is not constitutionally invalid as a denial of equal protection, and the findings of the trial court were insufficient to support a contrary conclusion.

As has previously been noted in this opinion, the trial court concluded that appellees had been successful in showing that the tax charge imposed was an invidious discrimination "as applied" to them. While the foregoing paragraphs completely resolve the equal protection

claims made, we have considered what further character may have been supplied the judgment of the trial court by use of the words "as applied." In tax cases, those words are to be found in connection with claims arising out of the misuse of authority by administrative officials engaged in enforcing valid tax statutes. The claims of Four Winds, Inc., and Ambassadair, Inc., are not based upon discriminatory administrative action. In the case of *Nashville C. & St. L. Ry.* v. *Browning*, (1940) 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, the Supreme Court established a short-form test for such claims. A claim of this sort cannot be successfully maintained if the grievance upon which it is based is common to the whole class. Here, appellees are clearly members of the class subject to the tax. Their craft fall within a specific age category. Their claim of unconstitutional discrimination is based upon their ability to identify taxable aircraft which are lighter and have greater value than their own, and consequently will pay a smaller tax under the age-weight criterion. This ability is common to the whole class and therefore the circumstances here do not merit the invocation of the protection of the Fourteenth Amendment *on this basis.*

While appellees have no burden on appeal to establish the validity of the judgment of the trial court, appellee, Ambassadair, Inc., has presented a new contention in its brief which was not raised in the trial court and which formed no basis for the judgment. It contends that the statute is unconstitutional in violation of Article 10, Section 1 in that it is in fact a property tax and impermissibly fails to impose a uniform and equal rate of property assessment as required by such provision, and that the trial court "could have properly found Ind. Code § 6-6-6.5-13" to have been unconstitutional on this basis. No such findings were made. Appellees assigned no cross-errors and appellant filed no reply brief. In fact, appellant was under no duty under our rules to file a reply brief and counter this contention. Ind. R. Ap. P. 8.3(C). We are reluctant to make a definitive constitutional determination

where the record and briefs are limited. *Board of Commissioners of Howard County* v. *Kokomo City Plan Commission*, (1975) 263 Ind. 282, 330 N.E.2d 92. Moreover, this new attack on the statute would not support the judgment of the trial if sustained. The judgment declared that the statute is unconstitutional as applied to appellees. This new contention, if sustained, on the other hand, would result in the invalidation of the entire statute. Ambassadair's new contention is wholly outside the issues in this case. It is therefore not before us for resolution.

Appellees were also successful in the trial court in obtaining a judgment based upon the conclusion that the tax imposed upon their aircraft is barred by the Due Process Clause of the Fourteenth Amendment and Article 1, Section 12, of the Indiana Constitution because it is too great. In *A. Magnano Co.* v. *Hamilton*, (1934) 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109, it was held that the Due Process Clause of the Fourteenth Amendment would not, except in rare and special instances, limit the size of tax charges imposed by the states. In drawing the line beyond which a state may not go without transgressing due process in this regard, the court said:

> "That clause is applicable to a taxing statute . . . only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property.
>
> *      *      *
>
> Nor may a tax within the lawful power of a state be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses . . . unless, indeed, as already indicated, its necessary interpretation and effect be such as plainly to demonstrate that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal Constitution to the state."

Article 1, Section 12, of the State Constitution would limit the power of the state in the same manner. *Thomas* v. *Lauer,* (1949) 227 Ind. 432, 86 N.E.2d 71.

Under the statute here, the tax upon appellees' aircraft amounted to $18,000 for the year 1976 and is scheduled to diminish over the succeeding three year period to a point where it levels off at about one-half that amount. Appellees would appear to have little cause to complain about a tax at that rate, because a tax at that level would be commensurate with the general property tax to which it could have been made subject. As it is the 1976 tax is a considerable hardship amounting to about 8% of the market value of the aircraft; however, upon consideration of the provisions of the statute and the impact on appellees, we find no attempted exercise of the power to destroy or confiscate the property or business of appellees, but are satisfied that the burden imposed is indeed a tax. In the recent case of *City of Pittsburgh* v. *Alco Parking Corp.*, (1974) 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132, a local 20% tax on the gross receipts of parking lots was upheld against a similar claim. That tax appears to be even more severe than the one to which appellees have been subjected.

The judgment of the trial court is reversed with instructions to grant judgment for the appellant.

Givan, C.J., Prentice and Pivarnik, JJ., concur; Hunter, J., concurs in result.

NOTE.—Reported at 368 N.E.2d 1340.