**SUNSHINE PROMOTIONS, INC.,**
**Appellant (Plaintiff Below),**

v.

**Julian L. RIDLEN, Individually and as treasurer of the State of Indiana, Thomas J. Catterson, Jack Maginity, and Matthew Walker, Individually and as members of the State Athletic Commission of Indiana, Appellees (Defendants Below).**

No. 4–1284A333.

Court of Appeals of Indiana,
Fourth District.

Sept. 30, 1985.

Rehearing Denied Dec. 13, 1985.

Craig Pinkus, Mitchell Hurst Pinkus Jacobs & Dick, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Fred S. Bremer, Deputy Atty. Gen., Indianapolis, for appellees.

CONOVER, Judge.

Plaintiff-Appellant Sunshine Promotions, Inc. (Sunshine) appeals an adverse judgment sustaining the constitutional validity of IND.CODE 25-9-1-22.5;[1] denying refund of $80,726.16 in taxes paid; and assessing additional tax of $309.70.

We affirm.

ISSUE

The sole issue raised here is whether I.C. 25-9-1-22.5 denies promoters of closed circuit telecasts for which tickets are sold equal protection of the law in contravention of Indiana Constitution Article 1, § 23 [2] and U.S. Constitution, Amendment 14, § 1.[3]

FACTS

The facts were stipulated by the parties.

Sunshine presented boxing matches between Muhammad Ali and Larry Holmes, Sugar Ray Leonard and Roberto Duran, and Sugar Ray Leonard and Thomas Hearns. These telecasts were simultaneous with the matches on October 2, 1980; November 25, 1980; and September 16, 1981 respectively. Sunshine's presentations were on closed circuit television to

---

1. 25-9-1-22.5 Closed circuit or subscription telecasts; tax; reports

Sec. 22.5. Every person, club, corporation, or association holding or showing any boxing, sparring, or wrestling matches on a closed circuit telecast or subscription television viewed within this state, whether originating within this state or another state, shall furnish the Indiana professional licensing agency (IC 25-1-6) a written report, under oath, stating the exact number of tickets sold for such showing and the amount of gross proceeds thereof, and such other matter as the commission may prescribe, and shall, within twenty-four (24) hours after the showing of said contest, pay to the state treasury a tax of ten percent (10%) of its total gross receipts from the sale of tickets for the showing of said boxing, sparring, or wrestling match. Money derived from such state tax shall be placed in the general fund of the state. *As amended by Acts 1981, P.L. 222, SEC. 98; P.L. 132-1984, SEC. 33.*

2. Art. 1, § 23 Privileges equal.—The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

3.      AMENDMENT 14

§ 1. Citizenship—Due process of law—Equal protection.—All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

paying customers at various locations in the state.

Under protest, Sunshine paid $80,726.16 in taxes pursuant to I.C. 25–9–1–22.5 and I.C. 25–9–1–23.[4] Sunshine is the only taxpayer known to have been taxed under these sections. Cable television systems in Indiana show boxing matches. The parties agree each cable television showing is either a "closed circuit telecast" or "subscription television" within the language of the statute. However, the cable systems do not sell separate tickets for their showings, the match showings being merely one part of the usual services provided by the cable companies.

The State does not collect the tax under I.C. 25–9–1–22.5 from the cable subscription services because the income does not represent gross receipts from the sale of tickets to patrons viewing the matches.

## DISCUSSION AND DECISION

I.C. 25–9–1–22.5 imposes a gross receipts tax on ticket sales to closed circuit or subscription telecasts of boxing, sparring or wrestling matches.

### A. *Administrative Remedies*

The State contends Sunshine Promotions failed to exhaust administrative remedies because it did not first seek from the Auditor of the State of Indiana a refund of the tax monies paid.[5] The State asserts the procedure for making a claim for refund is governed by the Administrative Adjudication Act[6] and any complaint for refund must first be pursued administratively. Then, if the claim is denied, the Auditor must be named as a necessary party to any subsequent legal action under Ind. Rules of Procedure, Trial Rule 12(B)(7), and Trial Rule 19, the State argues. However, it designates neither the office at which the procedure commences nor the form such complaint should take. Sunshine on the other hand contends no procedure exists for administrative review of refund claims under I.C. 25–9–1–22.5. Our review reveals no administrative procedure for seeking refund involving the Auditor is prescribed therein, in the first instance.[7]

Further, Sunshine sought a declaratory judgment concerning the consti-

**4.** 25–9–1–23 Unsatisfactory report; default in payment of tax; penalty

Sec. 23. Whenever any such report is unsatisfactory to the state treasurer he may examine or cause to be examined, the books and records of such person, club or corporation, or association and subpoena and examine, under oath, that person or officers and other persons as witnesses for the purpose of determining the total amount of the gross receipts derived from any contest, and the amount of tax due, pursuant to the provisions of this chapter, which tax he may, upon, and as a result of, such examination, fix and determine. In case of default in the payment of any tax so ascertained to be due, together with the expenses incurred in making such examination for a period of twenty (20) days after written notice to such delinquent person, club, corporation or association of the amount at which the same may be fixed by the state treasurer such delinquent shall be disqualified from receiving any new license or permit, and the attorney general shall institute suit upon the bond filed pursuant to section 22 of this chapter, to recover the tax and penalties imposed by this chapter. In addition to the tax found to be due by the state treasurer from such delinquent person, club, corporation, or association as herein provided, a penalty in the sum of not more than one thousand dollars ($1,000) for each offense shall also be recovered by the

attorney general in the name and for the benefit of the state of Indiana. *As amended by Acts 1982, P.L. 154, SEC. 35.*

**5.** I.C. 4–7–1–2 [The Auditor] shall,

\*　　\*　　\*　　\*　　\*　　\*

Fifth. Examine and liquidate the claims of all persons against the state in cases where provisions for the payment thereof shall have been made by law; and when no such provisions, or an insufficient one, has been made, to examine the claim, and report the facts, with his opinion thereon, to the legislature; and no allowance shall be made to refund moneys from the treasury without his statement either for or against the justice of the claim.

**6.** I.C. 4–22–1–1 through 4–22–1–30.

**7.** Although courts have no jurisdiction to grant relief until a party exhausts available administrative remedies, we note here I.C. 25–9–1–22.5 requires mailing of the tax proceeds "to the state treasury." I.C. 25–9–1–23 provides the State Treasurer fixes any tax due if the voluntary submission of the tax is unsatisfactory. It further provides if the tax is not paid the Attorney General shall *institute suit* [upon the bond required by I.C. 25–9–1–22] to recover any tax and penalties imposed but not paid.

tutional validity of I.C. 25–9–1–22.5. Neither the Auditor, the Treasurer, nor the Attorney-General have authority to make such a determination. It is not within the province of an administrative officer to pass on the validity of a statute. *Cf., U.S. Auto Club, Inc. v. Woodward* (1984), Ind. App., 460 N.E.2d 1255, 1259; *Ahles v. Orr* (1983), Ind.App., 456 N.E.2d 425, 426. The Declaratory Judgment Act specifically provides jurisdiction lies with the courts in such actions.[8] *See, e.g. U.S. Steel Corp. v. NIPSCO* (1985), Ind.App., 482 N.E.2d 501, 503–504; *Volkswagenwerk, A.G. v. Watson* (1979), 181 Ind.App. 155, 390 N.E.2d 1082, 1084–1085.

The trial court did not err by denying the State's motion to dismiss.

### B. *Equal Protection*

■ Sunshine contends the 10% tax imposed by Indiana Code 25–9–1–22.5 contravenes constitutional guarantees of equal protection of the laws provided by Indiana Constitution Art. 1, § 23 and U.S. Constitution Amendment 14, § 1.[9] Appellee contends the tax bears a fair and substantial relation to the purpose of the legislation. Thus, it passes constitutional muster, the State opines.

■ In support of its position the State claims, *inter alia,* a public policy against fighting exists. This contention is without merit. We agree with our Second District's conclusion this legislation displays no legislative intent or purpose to discourage public fighting but rather manifests as its purpose the regulation of professional boxing. *Championship Wrestling v. State Boxing Commission* (1985), Ind. App., 477 N.E.2d 302, 305. The so-called public policy contention was raised in that case and decided adversely to appellee's position.

The statutory provision at issue here is part of the Boxing Commission Act.[10] Its primary purpose is the regulation of pro-

fessional boxing for the protection of boxers from the inherent dangers of their sport. *Championship Wrestling,* 477 N.E.2d at 305. The primary purpose of I.C. 25–9–1–22.5 is the raising of revenue to defray the cost of the regulatory bureaucracy. It is a tax and not a means of regulation. *Championship Wrestling,* 477 N.E.2d at 307.

■ Our standard of review in these cases is well known. We recently stated:

Every act of the legislature comes to us with a strong presumption of constitutionality. *Taxpayers Lobby of Ind., Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814. The legislature has broad discretion in the classification of businesses or occupations for the purpose of levying taxes, and it is not our role to judge the wisdom or justness of the particular tax in question or to criticize the public policy which motivated it; these are legislative questions. *Lutz v. Arnold* (1935), 208 Ind. 480, 193 N.E. 840. The burden is on the challenger to clearly demonstrate the statute's invalidity, and all doubts are resolved in favor of the statute. *Taxpayers Lobby, supra.* Yet, we must recognize that the State's inherent power to tax is subject to the limitations imposed by the equal protection provisions of the state and federal constitutions. *Indiana Aeronautics Comm'n,* [(1977) 267 Ind. 137, 368 N.E.2d 1340] *supra.* The outer periphery of a state's power to levy taxes has been aptly described by the United States Supreme Court in *Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480.

"[T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that

---

8. I.C. 34–4–10–1, et seq.

9. The rights protected are identical and tested by the same standard. *See, e.g., Sobieralski v. City of South Bend* (1985), Ind.App., 479 N.E.2d 98, 100; *Championship Wrestling v. State Boxing*

*Commission* (1985), Ind.App., 477 N.E.2d 302, 304, n. 2.

10. I.C. 25–9–1–1 through I.C. 25–9–1–33.

is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' ".

*Id.* at 527, 79 S.Ct. at 441 (citations omitted) *quoted in Ambassadair,* [ (1977) ] *supra* 267 Ind. [137] at 143, 368 N.E.2d [1340] at 1344. In applying this test, we must make an independent analysis of the statute considering its "general character" and "overall objective" to determine "whether any reasonably conceivable purpose exists which would support the constitutionality of the classification employed." *Ambassadair, supra* at 144, 368 N.E.2d at 1344.

*Championship Wrestling,* 477 N.E.2d at 305.

In addition to the imposition of various fees for licenses and permits the Boxing Commission Act assesses taxes upon particular activities. I.C. 25–9–1–22 imposes a 10% gross receipts tax upon the sale of tickets for live performances. As described earlier, I.C. 25–9–1–22.5, at issue here, imposes a 10% gross receipts tax upon the sale of tickets for telecast performances. In addition, other forms of entertainment are subject to a gross income tax under I.C. 6–2.1–1–2(a)(2). Other income is generally taxed under I.C. 6–3–2–1.

■ While the State is not at liberty to resort to a tax classification which is palpably arbitrary, any classification is valid provided it rests upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced are treated alike. *Miles v. Department of Treasury* (1935), 209 Ind. 172, 188, 199 N.E. 372, 380, appeal dismissed (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372; *Lutz v. Arnold* (1935), 208 Ind. 480, 499, 193 N.E. 840, 847. Sufficient differences in the method of doing business may be justification for separate classification and differential tax treatment. *See, State Board of Tax Commissioners v. Jackson* (1931), 283 U.S. 527, 537–543, 51 S.Ct. 540, 543–545;

*Miles,* 209 Ind. at 190, 199 N.E. at 380. When social or economic legislation is at issue the equal protection clause allows states wide latitude. *City of Cleburne, Texas, et al. v. Cleburne Living Center, et al.* (1985), —— U.S. ——, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313. The differences in business practices need not be great to sustain the legislative classifications for tax purposes on equal protection grounds. *Jackson,* 283 U.S. at 538, 51 S.Ct. at 543.

■ Sunshine contends it is being treated differently from others within its classification in violation the equal protection clause of the Indiana and U.S. Constitutions. Specifically, Sunshine claims it and subscription cable providers are similarly classified but differently treated under I.C. 25–9–1–22.5. We disagree.

The only characteristics Sunshine and subscription cable providers share in common is the presentation of televised boxing matches. Otherwise, their services differ.

Subscription cable providers only incidentally provide boxing matches occasionally on one or two of the many channels included in the channel package each offers. Their subscribers thus may view or not view such fare, at their option. Further, subscription viewing occurs in the privacy of subscribers' homes on receivers of their own choosing without

(a) traveling to any central location,

(b) having permission to enter a particular place, and

(c) the necessity of dealing with any other persons concerned specifically with the match being telecast, whether those persons are patrons, promoters or general public.

Sunshine's customers, on the other hand, are purchasing the right to see a particular boxing match

(a) at a particular place and time,

(b) on a receiver over which they have no direct control, and

(c) in circumstances similar to the live boxing performance taxed under I.C. 25–9–1–22.

Thus, the service provided by Sunshine differs substantially from the service provided by the subscription cable services. It is directly and solely related to the regulated activity. The tax imposed is reasonably related to the raising of funds for the regulation of that activity. The imposition of the tax here questioned presents no violation of either our state or federal equal protection clause.

Affirmed.

YOUNG, P.J., and MILLER, J., concur.