COMMON CAUSE, INC., and Timothy Peterson, Appellants,

v.

STATE of Indiana, Appellee.

No. 49A02–9612–CV–842.

Court of Appeals of Indiana.

March 10, 1998.

W. Russell Sipes, Indianapolis, for Appellants.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellants, Common Cause, Inc. and Timothy Peterson (collectively "Common Cause"), appeal the trial court's granting of summary judgment in favor of the State of Indiana (State).

We affirm.

The sole issue for review is whether the Indiana Lobby Registration Commission (the Commission)[1] performs functions outside the scope of the legislative branch in violation of the doctrine of separation of powers.[2]

The facts are essentially undisputed. Upon appeal, Common Cause asserts that Article 3, § 1 of the Indiana Constitution prohibits members charged with official duties under one branch of government from exercising the functions of another branch. The trial court judge, Anthony J. Metz, III, made extensive findings of facts and conclusions of law regarding this issue. They are, in pertinent part, as follows:

**"FINDINGS OF UNDISPUTED FACT**

1. In 1992, the General Assembly passed Public Law 3–1992, over the Governor's veto. Among other things, the act established the Legislative Ethics Commission to regulate the activity of lobbyists before the Indiana legislature. See Ind. Code § 2–7–1–1, *et seq.* The following year, the General Assembly passed P.L. 9–1993, which amended various provisions of the statute, among other things changing the Commission's name to the Indiana Lobby Registration Commission. The statute expressly makes the Commission an agency of the legislative department of Indiana government and makes the Commission responsible for administering the lobbying statute. Ind.Code § 2–7–1.6–1.

2. Under the Lobbying Statute, lobbyists must register each year and file two semi-annual reports. Ind.Code § 2–7–2–1 and Ind.Code § 2–7–3–1.

\* \* \* \*

4. The Commission is required to implement the reporting requirements of the law by prescribing forms, collecting the resulting reports and making them available to the public, and conducting audits of at least 5% of the resulting reports to assure compliance with the requirements. *See* Ind.Code §§ 2–7–4–1 through 2–7–4–9. In addition, under the statute, the Commission may:

(1) Hold meetings as necessary.

(2) Make recommendations to the general assembly concerning administration of this article.

(3) Subject to I.C. 2–7–7, receive and hear any complaint alleging a violation of this article.

(4) Obtain information relevant to an audit conducted or a complaint filed under this article.

(5) Administer oaths.

(6) Act as an advisory body by providing advisory opinions to lobbyists on questions relating to the requirements of this article.

---

**1.** *See* I.C. 2–7–1–1 et seq. (Burns Code Ed. Repl. 1996).

**2.** *See* Ind. Const. art. 3, § 1.

(7) Establish qualifications for and employ the personnel required to implement this article.

(8) Adopt rules and procedures necessary or appropriate to carry out its duties.

(9) Make reasonable and necessary expenditures of money appropriated to the commission.

(10) Do other things necessary and proper:

(A) to implement this article; or

(B) as requested by the general assembly or the legislative council.

Ind.Code § 2–7–1.6–5(b).

5. The Commission consists of four members: one each appointed by the speaker of the house, the president pro tempore of the senate, and the minority leaders of both the house and senate. Ind.Code § 2–7–1.6–2. An incumbent legislator or lobbyist may not be appointed as a member of the commission, and not more than two of the four members may hold the same political affiliation. Ind.Code § 2–7–1.6–1.

\* \* \* \*

## CONCLUSIONS OF LAW.

\* \* \* \*

## I. SEPARATION OF POWERS

1. Each of the three branches of government, including the General Assembly, maintains exclusive control over its primary functions. As our Supreme Court has noted, this separation of powers is 'the keystone of our form of government.' *Book v. State Office Building Commission,* 238 Ind. 120, 149 N.E.2d 273, 293 (1958). Separation of powers prevents one branch from appropriating the powers of another, so that a branch 'shall never be controlled by or subjected directly or indirectly to the coercive influence of either of the others.' *Matter of Tina T.* 579 N.E.2d 48, 59 (Ind. 1991), citing *Rush v. Carter,* 468 N.E.2d 236, 238 (Ind.Ct.App.1984).

2. To maintain its independence, each branch in carrying out its primary functions necessarily performs incidental activities that might, at first blush, be considered functions of another branch. Indiana law has long recognized that each branch has such incidental powers 'as are necessary to enable it to perform its functions as an independent branch of the government, and [those powers] are in fact part of the principal power itself.' *State v. Noble,* 118 Ind. 350, 21 N.E. 244, 245 (1889).[3]

3. The appointment of members of the Indiana Lobby Registration Commission falls well within the incidental powers of the General Assembly because the purpose of the Commission is incidental to the legislative function. Even though the act of appointment is generally considered an executive function, the legislature has the ability to appoint 'officers and employees whose duties are an incident to its legislative function.' *Tucker v. State,* 218 Ind. 614, 35 N.E.2d 270, 284 (1941).

4. The Indiana legislature created the Indiana Lobby Registration Commission to regulate the activity of individuals and organizations who lobby members of the legislature. By definition, lobbyists attempt to influence the individual members of the General Assembly 'with the purpose of influencing any legislative action.' Ind.Code § 2–7–1–9.

5. The General Assembly must be able to regulate lobbyists who come before it, so that it can fulfill its primary duty to represent Indiana citizens. Therefore, by placing the administration of the lobbying statute with its own branch, the legislature legitimately acts to maintain the integrity of its own branch of government.

6. The Indiana Constitution expressly grants the General Assembly the power to regulate its own operations. A series of provisions grant the General Assembly the authority to determine rules of proceeding, Ind. Const. art. IV, § 10, to discipline

---

**3.** In explaining *Noble* the very same year, our Supreme Court noted: "[T]he power to appoint to office is an executive function, but may be exercised by the legislature or the courts as an incident of the principal power,—that is, when necessary to the exercise of their legislative or

judicial power. This must be so, otherwise it would be impossible for either the judicial or legislative departments to exercise the powers delegated to them." *State ex rel. Yancey v. Hyde* (1889) 121 Ind. 20, 22 N.E. 644, 648.

members, Ind. Const. art. IV, § 14, and to discipline others 'who shall have been guilty of disrespect to the house.' Ind. Const. art. IV, § 15. A catchall provision grants each house 'all powers necessary for a branch of the legislative department of a free and independent State.' Ind. Const. art. IV, § 16.

7. In essence, the ability of the legislature to regulate lobbyists is analogous to the authority the Supreme Court exercises over the conduct of lawyers who practice in Indiana. *Cf. Matter of Mann,* 270 Ind. 358, 385 N.E.2d 1139, 1141 (1979) Just as the courts must have the ability to regulate those who practice in front of them, so too must the General Assembly have the authority to regulate the activities of those seeking legislative redress.

8. Our Supreme Court 'has held repeatedly that courts should not intermeddle with the internal functions of either the Executive or Legislative branches of Government.' *State ex Rel. Masariu v. Marion Superior Court,* 621 N.E.2d 1097, 1098 (Ind.1993). In *Masariu,* the Supreme Court stated that the judiciary could not adjudicate a claim brought against the principal clerk of the House of Representatives, where the remedy sought—an order compelling particular record keeping actions—would amount to an unconstitutional inference with the internal workings of the legislature. The court stated, 'if the legislature wishes to authorize sanctions against itself ... such sanctions would have to be determined and imposed solely by the legislative branch, itself without recourse to the courts.' *Id.* at 1098. Plaintiffs' claim that either the executive or judicial branch should regulate lobbying before the General Assembly, if accepted, likewise would subject the legislature to the coercive influence of another branch of government, and would thus violate the ideal of three separate and independent branches.

9. The analysis and case law upon which plaintiffs rely to suggest that the Commission's functions are not a proper incident of the General Assembly's legislative powers are inapposite. For example, *Board of Ethics v. Green,* 545 So.2d 1031 (La.1989), upon which plaintiffs rely, was reconsidered by the Louisiana Supreme Court. *See Board of Ethics v. Green,* 566 So.2d 623 (La.1990). Moreover, *Green* involved a body given general authority to enforce campaign finance laws. The Commission has no such authority. *See* Ind. Code § 2–7–1–4(b)(2) (explicitly defining 'gift' to exclude campaign contributions). Rather, under Indiana law, administration of campaign finance laws is vested in the Election Commission, *see* Ind.Code § 3–6–4.1–14, whose members are appointed not by the General Assembly, but by the Governor. Ind.Code § 3–6–4.1–2. Thus *Green* did not consider a legislative body's power to regulate those who make their living attempting to influence its actions. In addition, the 'executive' function that the initial *Green* opinion held could not be vested in legislative appointees was that of bringing suit in the courts. 545 So.2d at 1036 (citing *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). Under the Indiana Lobby Registration Commission's statute, that authority is vested first in the local prosecuting attorney and secondarily in the Attorney General. *See* Ind.Code § 2–7–4–7.

10. The one Indiana authority upon which plaintiffs rely is likewise inapposite. *State ex rel Jameson v. Denny,* 118 Ind. 382, 21 N.E. 252 (1889). The officials whose appointment was considered in *Jameson* were a local 'board of public works' that was to be given power over construction and maintenance of streets, highways, sewers and the like. 21 N.E. at 253. Unlike the present case, Jameson involved the appointment of officials whose functions were 'in no manner connected with the discharge of legislative duties.' *Id.* at 254. In fact, the Supreme Court expressly recognized that the General Assembly may appoint officers 'necessary to enable them to properly discharge its duties as an independent legislative body.' *Id.*

11. The regulation of lobbyists is such a function. In fact, it is not uncommon for legislative bodies to *directly* regulate lobbyists. *See National Association of Social Workers v. Harwood,* 69 F.3d 622 (1st Cir.1995). In *Harwood,* the First Circuit

vacated a lower court's order and dismissed a challenge to the practice of Speaker of the Rhode Island House and its head doorkeeper refusing to allow lobbyists on the floor of the house during the session, but permitting government officials and members of the public to be present. The Court held that such actions were within the scope of the Rhode Island legislature's legitimate legislative functions, and therefore were shielded by legislative immunity. The Court held:

> We think it is beyond serious dispute that enforcing a duly enacted legislative rule which prohibits lobbying on the House floor during House sessions is well within the legislative sphere.

*Id.* at 632. While Harwood involved regulation in the legislative chamber itself, its principles apply to other forms of lobbying as well. To restrict the powers of the General Assembly to regulate lobbying to the legislative chamber would render those powers wholly ineffective. To require additional powers to be placed in other branches of government would require the General Assembly to surrender its independence as a coequal branch of government. Indiana separation of powers principles require neither result."

Record at 162–70 (footnote in original omitted) (footnote supplied). We discern no reason to reformulate what Judge Metz has so clearly and articulately stated. Accordingly, we adopt the quoted portions of his Findings and Conclusions.

Common Cause first asserts that appointment of persons to the Commission is an executive function, and therefore outside the realm of the legislature. *See Tucker v. State* (1941) 218 Ind. 614, 35 N.E.2d 270, 292. While we agree with the general proposition that the appointment power is the function of the executive, the General Assembly does have the "incidental power of appointing those who assist in carrying out the legislative functions." *Id.* at 284. The regulation of lobbyists is incidental to the function of the legislative branch. The members of the Commission assist in carrying out the legislative function, and therefore, the legislature has the power to appoint members to the Commission.

Common Cause further argues that the Commission is impermissibly granted broad power to conduct investigations, hearings and impose sanctions for violations of Title 2, Chapter 7. While I.C. 2–7–7 allows the Commission to conduct investigations and hearings upon violations of the article, I.C. 2–7–6 clearly dictates that criminal investigation and prosecution of violations shall be made by the appropriate prosecuting attorney or the attorney general through the judiciary. The investigation and hearing of violations of the article by the Commission is limited to civil remedies. In fact, the only remedies listed under the statute are revocation of lobbyists' registrations and civil penalties. *See* I.C. 2–7–6–5, 6. These powers are necessarily an integral part of the legislative function. The Commission has no power to prosecute or punish criminal violations of the law, and the Commission's adjudications as to civil sanctions are reviewable by the judiciary under I.C. 4–21.5. *See* I.C. 2–7–7–5(c).

▪ Also, as noted by Judge Metz, just as "[i]t is the exclusive province of [the Supreme] Court to regulate legal activity", it is the exclusive province of the legislature to regulate the activity of lobbyists. *See Matter of Mann* (1979) 270 Ind. 358, 385 N.E.2d 1139, 1141. The Commission is not authorized to conduct a criminal proceeding; this is an internal disciplinary proceeding, one within the power of the General Assembly to conduct.

We therefore conclude that the legislature's establishment of the Commission and the Commission's activities are not violative of Article 3, § 1 of the Indiana Constitution.

The decision of the trial court is hereby affirmed.

FRIEDLANDER and KIRSCH, JJ., concur.