**HEALTHSCRIPT, INC., Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9908–CR–370.**

Court of Appeals of Indiana.

Feb. 22, 2000.

David F. McNamar, McNamar, Fearnow & McSharar, P.C., Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Healthscript, Inc. (Healthscript) appeals the trial court's denial of its motion to suppress and motion to dismiss with respect to criminal charges lodged against it for Medicaid Fraud,[1] a class C felony. Specifically, Healthscript contends that the cause should have been dismissed because the State was improperly prosecuting it for an alleged violation of an administrative regulation. Healthscript further maintains that the motion to suppress should have been granted because the affidavit for the search warrant contained unsubstantiated hearsay evidence and falsehoods. Thus, Healthscript argues that the "good faith exception" to the exclusionary rule in obtaining the search warrant was inapplicable in these circumstances because there was no indicia of probable cause.

### *FACTS*

Healthscript is an Indiana corporation and licensed pharmacy. Additionally, it has been an enrolled health provider for the Medicaid program since October 3, 1995. Between November 1995 and June 1997, Healthscript submitted claims to, and was paid by, Medicaid for deliveries of sterile water to the Haven Center, a long-term care facility in Shelby County which provided services primarily to young people with severe disabilities. Haven Center was an enrolled provider for Medicaid from November 1995 through June 1997, and continues to be a provider.

On October 7, 1997, an affidavit for a search warrant of Healthscript's offices was prepared based on information reported by Laura Clark, a Medicaid Fraud Control Unit investigator, along with information supplied to her by two of Healthscript's former office managers. In

1. IND. CODE § 35-43-5-7.1.

part, the affidavit stated that "[b]ased on the above information, the affiant has probable cause to believe evidence of the crime of Medicaid fraud is located at 5779 Park Plaza Court, Indianapolis, Indiana." R. at 183, 212. The trial judge signed a search warrant ordering the sheriff's department to diligently search for "billing records, patient records, inventory records, letters, pricing guides, internal memorandum, invoices, delivery tickets, sterile water, trash, drug inventory, computers and data stored in computers and all peripherals, computer diskettes, corporate records and any other items associated with or tending to indicate a violation or [sic] of [sic] the conspiracy to violate IC 35–43–5–7.1." Record at 23.

On October 8, 1997, a search was conducted and prescriptions, examples of sterile water, tracheotomy kits, binders of explanations of benefits, documents, correspondence, invoices that reflected what had been delivered to the various facilities by Healthscript, correspondence between Healthscript and nursing home administrators proposing delivery of sterile water to Medicaid residents, medical manuals, provider agreements, and financial information were seized. Healthscript continued to do business and billed Medicaid $1,076,206.66 from October 27, 1997 to November 11, 1997.

Based upon the documents that were seized under the warrant, the State alleged that Healthscript delivered sterile water to non-Medicaid patients at a number of nursing homes and retirement centers in Indiana from 1995 through 1997. Healthscript typically charged these institutions from $22 to $25 per 9000 milliliters of the water. During this same period, the State alleged that Healthscript charged the Indiana Medicaid program at the rate of $181 per 9000 milliliters. R. at 25. In light of this information, the State charged Healthscript with Medicaid fraud for submitting claims to Medicaid for the water in amounts greater than the usual and customary charge to private pay patients.

On November 16, 1998, Healthscript moved to dismiss the action alleging, *inter alia,* that the charging information failed to state an offense with sufficient certainty and that the facts set forth in the information did not constitute a criminal offense. After the trial court denied the motion, the State amended the charging information. Thereafter, Healthscript filed another motion to dismiss, again asserting that any offense Healthscript may have committed was not a criminal offense and could only be a violation of an administrative regulation. Healthscript also filed a motion to suppress, asserting that the affidavit forming the basis for the search warrant was defective in that it contained improper hearsay evidence and was not supported by probable cause. Healthscript further maintained that the "good faith exception" to the exclusionary rule did not apply here because various misstatements of facts contained in the affidavit misled the trial court.

The cause was eventually transferred to Marion County, at which time Healthscript renewed its motion to dismiss. R. at 115. The trial court denied this motion along with the motion to suppress. Thereafter, the trial court certified its rulings for interlocutory appeal pursuant to Healthscript's request. This court subsequently accepted jurisdiction of this appeal on August 30, 1999.

*I. Motion to Dismiss*

Healthscript first contends that the trial court erred in denying the motion to dismiss for the reason that the State is prohibited from prosecuting it for violating an administrative regulation. Specifically, it contends that the trial court was compelled to dismiss the action because there is no provision contained in the Medicaid statutes addressing a situation where a provider charges Medicaid in an amount more than its usual and customary charge.

To resolve this issue, we first note the provisions of I.C. § 35–43–5–7.1, the statute under which Healthscript was charged:

(a) Except as provided in subsection (b), a person who knowingly or intentionally:

(1) files a Medicaid claim, including an electronic claim, in violation of I.C. 12–15;

. . .

commits Medicaid fraud, a Class D felony.

(b) The offense described in subsection (a) is a Class C felony if the fair market value of the claim or payment is at least fifty thousand dollars ($50,000).

The companion statute, IND. CODE § 12–15–21–1, states that "a provider who accepts payment of a claim submitted under the Medicaid program is considered to have agreed to comply with the statutes and *rules governing the program.*" (Emphasis added). Yet another statute, I.C. § 12–15–24–1, provides that "[e]vidence that a person or provider received money or other benefits as a result of a violation of (1) a provision of this article; or (2) a rule established by the secretary under this article; constitutes prima facie evidence, for purposes of I.C. § 35–43–4–2, that the person or provider intended to deprive the state of a part of the value of the money or benefits."

Here, the State alleged that Healthscript had violated 405 IAC 1–6–21.1, a rule governing the Medicaid program, which requires providers not to bill Medicaid for amounts exceeding the usual and customary charge for an item or service.[2] Inasmuch as this regulation is embodied and incorporated into the Medicaid Fraud statute, there is no merit to Healthscript's argument that the trial court improperly expanded the definition of Medicaid fraud to include the administrative rules.

█ We next note that Healthscript's argument that it may not be prosecuted because 405 IAC 1–6–21.1 has been repealed, must fail. The record demonstrates that this section was repealed on July 25, 1997, while Healthscript allegedly committed the acts before that date. Inasmuch as 405 IAC 1–6–21.1 was in effect when Healthscript engaged in the alleged wrongdoings, the trial court did not err in denying the motion to dismiss. *See Heath v. State,* 173 Ind. 296, 298, 90 N.E. 310, 311 (1910) (criminal activity may be charged if the conduct was a crime on the date of commission and the offense has later been repealed if there is no specific language in the statute prohibiting such prosecution).

█ As a final note, we reject Healthscript's argument that the trial court should have dismissed the cause because the offense of Medicaid fraud violates Art. 3, § 1 of the Indiana Constitution. In relevant part, this article provides that:

> The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

█ Each of the three branches of government, including the General Assembly, maintains exclusive control over its primary functions. *Common Cause, Inc. v. State,* 691 N.E.2d 1358, 1360 (Ind.Ct. App.1998). Moreover, each branch in carrying out its primary functions necessarily performs incidental activities that might, at first blush, be considered functions of another branch. *Id.* Our Supreme Court has determined that the legislature may constitutionally delegate rule-making powers to an administrative agency if that delegation is accompanied by sufficient standards to guide the agency in the exercise of its statutory authority. *Barco Beverage Corp. v. Indiana Alcoholic Beverage*

2. Although this specific provision was repealed after Healthscript's conduct had occurred, we note that this provision is currently codified in 405 IAC 5–24–4 which prohibits billing Medicaid patients more than private pay patients.

*Com'n.,* 595 N.E.2d 250, 253–54 (Ind.1992). The only limitation on the legislature's delegation of authority to administrative bodies is that reasonable standards must be established to guide the administrative body. *Id.* at 254. Such standards only need to be as specific as the circumstances permit, considering the purpose to be accomplished by the statute. *Id.* Although the non-delegation doctrine prohibits the legislature from delegating its power to make law, the legislature can delegate power to determine facts or the state of things upon which the application of the law depends. *Clemons v. State,* 162 Ind. App. 50, 52, 317 N.E.2d 859, 861 (Ind.Ct. App.1974).

In addition to the above, we note that Healthscript acknowledges that I.C § 35–43–5–7.1 makes it a criminal offense to knowingly file a Medicaid claim in violation of I.C. § 12–15. Appellant's Brief at 15. It is readily apparent that Healthscript was charged with violating a criminal statute enacted by the legislature, and Healthscript has failed to make any showing that it was being prosecuted solely for violating an administrative regulation. Thus, there is no violation of Article 3, § 1, and the trial court did not err in denying Healthscript's motion to dismiss.

*II. Motion to Suppress*

Healthscript next claims that the trial court erred in denying its motion to suppress. Specifically, it asserts that the affidavit for the search warrant contains only conclusions that were based upon unsupported and unverified hearsay statements. Thus, Healthscript maintains that the warrant lacked any indicia of probable cause. Healthscript further alleges that the detective who completed the affidavit for the search warrant made certain misrepresentations of fact when attempting to secure the search warrant. As a result, Healthscript maintains that the "good faith exception" to the exclusionary rule may not apply in these circumstances.

In determining whether to issue a search warrant, the issuing magistrate must make a practical, commonsense decision whether there is a fair probability or a substantial basis to conclude that contraband or evidence of a crime will be found in a particular place given all the circumstances set forth in the affidavit. *Jaggers v. State,* 687 N.E.2d 180, 181–82 (Ind. 1997). Thus, when this court considers the adequacy of a search warrant, we focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause, giving significant deference to the magistrate's determination. *Id.* To establish probable cause to issue a search warrant, the affidavit need only show that there is a probability that police will find evidence of criminal activity. *Cutter v. State,* 646 N.E.2d 704, 713 (Ind.Ct.App.1995), *trans. denied.*

An affidavit must provide a sufficient basis of fact to warrant a reasonably prudent person to believe that a search of the premises will reveal evidence of a crime. *Utley v. State,* 589 N.E.2d 232, 236 (Ind.1992). The decision to issue a warrant may be based not only upon the facts presented by the affiant, but also upon the reasonable and rational inferences that may be drawn from those facts. *Cutter,* 646 N.E.2d at 714. Credibility is established, for purposes of determining probable cause, if the informant was a cooperative citizen aiding in the investigation of an ongoing criminal investigation of conduct he has witnessed. *Id.* at 713. Although uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant, the trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including (1) where the informant has provided correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easi-

ly predicted. *Jaggers*, 687 N.E.2d at 181–82. Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay. *Id.* at 182.

In the instant case, the affidavit for the search warrant reveals that two of Healthscript's former office managers provided information to Detective Natalie Heffner of the Marion County Sherriff's Department. Specifically, they informed Detective Heffner that Healthscript did not credit Medicaid for returned sterile water, that Healthscript "double-billed" Medicaid for the same sterile water that was dispensed to another patient, and that Healthscript billed Medicaid for services it did not perform. R. at 19–21.

The affidavit reveals that Eleanor White was Healthscript's office manager from June 22, 1997 through September 24, 1997. White ultimately left her position with the company because she was concerned that the company was committing Medicaid fraud. R. at 19. Mary Whitaker was the office manager from January 1996 until June 1997. R. at 20. White and Whitaker's duties included payroll and billing Medicaid and Medicare as directed by Healthscript's owners. They noted that Healthscript maintained paper and computer records at its Indianapolis pharmacy. White stated that Kathy Woodcock, an owner of Healthscript, told her that Healthscript does not credit Medicaid for unused water returned to the pharmacy. Rather, Healthscript redistributes the returned water, which has already been paid for by Medicaid, to other patients. Healthscript then re-bills Medicaid for the same water. The affidavit further provides that Whitaker told the investigator that after a claim had been denied by Medicaid as a non-covered item, she asked Woodcock for the delivery ticket, and was told by Woodcock that the ticket did not exist because Healthscript had not really provided the service.

The information contained in the affidavit shows that both White and Whitaker had personal knowledge of Healthscript's alleged fraudulent practices. Additionally, we note that the affidavit reveals that an investigator with the Attorney General's Medicaid Fraud Control Unit who reviewed various Medicaid billings for Healthscript corroborated the information that Whitaker and White had supplied to the detective. R. at 20. Inasmuch as the trial court determined that these individuals actually witnessed the events and were cooperative in assisting the police in the investigation of Healthscript, their credibility was properly established. *See Cutter*, 646 N.E.2d at 713 (credibility is established for purposes of determining probable cause if the informant was a cooperative citizen aiding in the investigation of criminal conduct he witnessed).

Notwithstanding the above, Healthscript also maintains that the search warrant was invalid because in light of a purported error set forth in the affidavit with respect to whether Healthscript violated the Medicaid "per diem rule."[3] However, additional facts in the affidavit support a finding of probable cause that Healthscript committed a criminal offense. Specifically, the affidavit alleges that Medicaid was billed for supplies that Healthscript never used. Such an allegation in and of itself sufficiently establishes a substantial basis to support an initial determination that a fair probability existed that evidence of a criminal offense would be found at Healthscript's offices. Thus, no error here.

3. The warrant was issued based upon an assertion that Healthscript was charging for a "medical supply" that they included in a nursing facility's Medicaid per diem rate. The State subsequently determined that it could not prosecute Healthscript upon that theory because such conduct did not constitute a criminal offense. The charging information does not mention payments for "medical supplies" to nursing facilities, but alleges that the charges for the drug items are not the company's "usual and customary charges."

Finally, we note that Healthscript challenges the validity of the search warrant on the grounds that the good faith exception does not apply in these circumstances because the trial court was misled by the information set forth in the affidavit.

The exclusionary rule does not require suppression of evidence obtained in reliance on a warrant, later determined to be invalid, if the police relied upon the warrant in objective good faith. *Jaggers v. State,* 687 N.E.2d at 184. The exception does not apply, however, where the judge is misled by information that the affiant knew was false or would have known was false but for his reckless disregard for the truth, or the warrant was based on an affidavit so lacking in indicia of probable cause that the officer's reliance upon it was entirely unreasonable. *Id.*

Here, even assuming that the warrant may have been "technically" defective in light of the reference to Healthscript's charge for medical supplies at a per diem rate, the evidence need not be suppressed because the deputy sheriff and Medicaid Control Unit's reliance upon the warrant was objectively reasonable. As noted above, the warrant provided enough particulars that the officers executing it could reasonably rely upon the judge's determination of probable cause. Specifically, the basis for the probable cause finding consisted of the information provided by the two former office managers that Healthscript had violated the law in billing for services that were not provided. R. at 182–83. Contrary to Healthscript's claim, there is no evidence demonstrating that the trial judge was misled in approving the warrant.[4] Thus, the probable cause affidavit was not "so lacking in indicia of probable cause" that the officers' reliance on it was unreasonable. To the contrary, the affidavit contained the information necessary to constitute probable cause and therefore complied with the requirements of the Fourth Amendment. As a result, the trial court properly denied Healthscript's motion to suppress.

*CONCLUSION*

In light of our resolution of the issues set forth above, we conclude that the trial court properly denied Healthscript's motion to dismiss, inasmuch as the Medicaid fraud statute prohibits Healthscript from billing Medicaid for the sterile water in an amount exceeding its "usual and customary charge." We also note that because the affidavit for the search warrant of Healthscript's premises was correctly based upon a determination of probable cause, the trial court properly denied the motion to suppress.

Judgment affirmed.

STATON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting

Although I agree with the majority concerning the validity of the issuance of the search warrant, I must respectfully dissent to the extent that the majority holds that Healthscript, Inc. may be prosecuted for violation of an administrative rule.

I.C. 1–1–2–2 specifies: "Crimes shall be defined and punishment therefor fixed by

4. In denying Healthscript's motion to suppress, the trial judge specifically commented as to the alleged errors contained in the affidavit:

> Healthscript makes much of a purported error in the affidavit as to whether the Medicaid per diem rule was violated. Assuming this to be an error, the Court finds that additional facts in the affidavit support a finding of probable cause that criminal conduct occurred. The affidavit alleges that Medicaid was billed for supplies Healthscript never used. This in itself is sufficient to establish the 'substantial basis' to support Judge Wiles' initial determination that a fair probability existed that evidence of a crime would be found at the Healthscript offices. Thus, even if part of the facts were in error, other facts were sufficient to establish probable cause.

R. at 167.

statutes of this state *and not otherwise.*" (Emphasis supplied).

The general provision of I.C. 12–15–21–1 to the effect that a provider is considered to have agreed to comply with the Medicaid rules, may afford a basis for determining that the agreement has been breached by a rule violation, and perhaps permit termination of one's status as a Medicaid provider. It does not, however, constitute a legislative pronouncement that violation of a rule is a criminal offense.

A claim filed in violation of I.C. 12–15 constitutes Medicaid Fraud. However, nowhere within I.C. 12–15 has the General Assembly proscribed a charge in excess of the "usual and customary charge." That purported prohibition is contained only in the administrative rule 405 IAC 1–6–21.1. Although I.C. 12–15 contemplates promulgation of various administrative rules, it does not purport to criminalize a breach of the rules; nor does I.C. 12–15 itself limit charges to that which is "usual and customary."

I.C. 12–15–24–1 appears at first glance to countenance conviction of a criminal offense for violation of a rule. It states that violation of a rule "constitutes prima facie evidence, *for purposes of IC 35–43–4–2,* that the person or provider intended to deprive the state of part of the value of the money or benefits." (Emphasis supplied). It is imperative that we acknowledge that I.C. 35–43–4–2 is the general Theft statute. It is not the Medicaid Fraud statute, I.C. 35–43–5–7.1 Had the General Assembly wished to incorporate the Medicaid Fraud Statute into I.C. 12–15–24–1, it could have done so. It did not.

Healthscript could have been charged with theft under I.C. 35–43–4–2 but again it was not so charged. See *Beech v. State,* 162 Ind.App. 287, 319 N.E.2d 678 (1974).[5]

Even were it otherwise, the violation of the rule is not itself the crime. It is but evidence of the crime of theft.

For the reasons stated, I would reverse and remand with instructions to grant the Motion to Dismiss.

5. Although Medicaid Fraud might appear, at first blush, to be a species of the general crime of theft, it appears that the General Assembly intended the two crimes to be separate and distinct. This legislative intent is manifested, in part, by the fact that theft involving less than $100,000 is, under I.C. 35–43–4–2, a Class D felony, while Medicaid Fraud, involving less than $100,000 may be a Class C felony, i.e., for claims involving between $50,000 and $100,000.