**HEALTHSCRIPT, INC., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S05–0102–CR–00108.

Supreme Court of Indiana.

June 28, 2002.

812

David F. McNamar, McNamar & McSharar, P.C., Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

Defendant Healthscript, Inc., was charged with Medicaid Fraud for allegedly overcharging Medicaid for products it provided to its customers. The trial court denied its motion to dismiss and Defendant appealed. We reverse the trial court's denial of Defendant's motion to dismiss, finding that the statute under which Defendant was charged is too vague to meet the requirements of due process.

*Background*

Medicaid is a joint federal-state program that pays for some health care costs of low-income people, including care in long-term care facilities such as nursing homes. The federal government pays about 62% of the costs of Medicaid in Indiana; the state pays the balance. Kendra A. Hovey & Harold A. Hovey, *CQ's State Fact Finder* 135 (2002). Defendant is a licensed pharmacy authorized to provide health-related services under Indiana's Medicaid program. In Medicaid parlance, Defendant is a "provider." Between November, 1995, and June, 1997, Defendant submitted claims to and was paid by Medicaid for deliveries of sterile water to Haven Center, a long-term care facility. In 1998, the State charged Defendant under Ind.Code

§ 35–43–5–7.1(a)(1) (Supp.1997)—to be discussed in detail *infra*—with the crime of "Medicaid Fraud" on the theory that Defendant had overcharged Medicaid for the sterile water delivered to Haven Center.

 Defendant filed a motion to dismiss, arguing that Defendant could not be charged under Ind.Code § 35–43–5–7.1(a)(1) for the acts that the State had alleged. Defendant also filed a motion to suppress regarding a search warrant, which Defendant contends was illegally obtained. The trial court rejected both claims and certified its rulings for interlocutory appeal. The Court of Appeals reversed the trial court's ruling on Defendant's motion to dismiss.[1] *See Healthscript, Inc. v. State*, 740 N.E.2d 562 (Ind. Ct.App.2000) (on rehearing). Having previously granted transfer, 753 N.E.2d 6 (2001) (table), we now review the trial court's ruling.

### *Discussion*

### I

Reduced to its essentials, this is a case about whether a criminal statute, Ind.Code § 35–43–5–7.1(a)(1) (Supp.1997), is sufficiently definite to put Defendant on notice that its alleged conduct was proscribed. As such, a fairly careful parsing of the relevant statutory and regulatory language is required.

We start with the language of Ind.Code § 35–43–5–7.1(a)(1) (Supp.1997), the criminal statute under which Defendant was charged with the crime of "Medicaid Fraud." It provides in relevant part:

[A] person who knowingly or intentionally ... files a Medicaid claim, in-

cluding an electronic claim, in violation of Indiana Code § 12–15 ... commits Medicaid fraud, a Class D felony.

As such, we are required to examine Ind.Code § 12–15 (1993 & Supp.1997). This article of the Code comprises Indiana's Medicaid statute. Among its provisions is the following:

A provider who accepts payment of a claim submitted under the Medicaid program is considered to have agreed to comply with the statutes and rules governing the program.

Ind.Code § 12–15–21–1 (1993). A Medicaid regulation in effect at the time of Defendant's alleged submissions specified that providers could not be paid by Medicaid more than their "usual and customary charge" to private non-Medicaid customers. Ind. Admin. Code tit. 405 r. 1–6–21.1(g)(3) (1996 & Supp.1997).

The State alleged that Defendant charged between $22.50 and $25.00 per 9000 milliliters to three other customers while charging the Medicaid program $181.00 per 9000 milliliters. According to the State, the resulting payments exceeded $50,000. It was the State's theory, then, that Defendant did not comply with Ind. Admin. Code tit. 405 r. 1–6–21.1(g)(3) when it overcharged the Medicaid program; that this in turn *violated* Ind.Code § 12–15–21–1 because Defendant did not abide by its agreement to "comply with the ... rules governing [Medicaid];" and Defendant therefore committed a class C felony under the Medicaid Fraud Statute, Ind.Code § 35–43–5–7.1(a)(1), by submitting a claim in violation of Ind.Code § 12–15.

---

1. The Court of Appeals affirmed the trial court's ruling on the search warrant. *Healthscript, Inc. v. State*, 724 N.E.2d 265, 271–73 (Ind.Ct.App.2000), *rev'd on reh'g on other*

*grounds,* 740 N.E.2d 562 (Ind.Ct.App.2000). We summarily affirm the Court of Appeals on this issue. Ind. Appellate Rule 58(A)(2).

## II

■ Defendant attacks the charges against it with several arguments.[2] Its broadest claim is that the charges must be dismissed because they violate constitutional separation of powers principles. Citing Ind. Const. Art. III, § 1,[3] Defendant contends that the Legislature has impermissibly delegated its constitutional power to an administrative agency. Defendant argues that only the Legislature can enact a criminal law: "The legislature cannot delegate its statutory authority to enact criminal law to an administrative agency by way of an agency's rule-making power." (Br. of Appellant at 19) (citing *Ensign v. State*, 250 Ind. 119, 235 N.E.2d 162, 164–65 (1968)).[4]

■ We have held that the Legislature may constitutionally delegate rule-making powers to an administrative agency if that delegation is accompanied by sufficient standards to guide the agency in the exercise of its statutory authority. *Barco Beverage Corp. v. Indiana Alcoholic Beverage Com'n*, 595 N.E.2d 250, 253–54 (Ind.1992) (quoting *Taxpayers Lobby of Indiana, Inc. v. Orr*, 262 Ind. 92, 103, 311 N.E.2d 814, 819 (1974)).[5] Whether the delegation at issue here contravenes that principle is a question we need not decide today because we decide the case on other grounds.[6]

2. Healthscript is charged with respect to covered legend drugs alleged to have been delivered between Nov. 1, 1995, and June 30, 1997. The "usual and customary charge" regulation, Ind. Admin. Code tit. 405 r. 1–6–21.1(g), was repealed July 25, 1997. *See* 20 Ind. Reg. 3365 (1997). In the Court of Appeals, Healthscript argued that it could not be prosecuted because the regulation had been repealed. The Court of Appeals rejected this claim. *Healthscript, Inc. v. State*, 724 N.E.2d 265, 270 (Ind.Ct.App.2000), *rev'd on reh'g on other grounds*, 740 N.E.2d 562 (Ind.Ct.App. 2000). We summarily affirm the Court of Appeals on this point. App. R. 58(A)(2).

3. "The powers of the Government are divided into three separate departments; the Legislative, the Executive, including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

4. In *Ensign*, an employee of the Discount Gas Corp. was indicted on a charge of involuntary manslaughter in the death of a woman killed in an explosion on Halloween night, 1963, at the State Fairgrounds Coliseum. The basis of the indictment was that the explosion occurred after the defendant had unsafely stored three 100–pound cylinders of liquid propane at the Coliseum. A jury trial resulted in a verdict of guilty of assault and battery. 250 Ind. at 120, 235 N.E.2d at 162–63.

On appeal, our court held that defendant's indictment should have been dismissed because it was "not based upon the violation of any statute of the State of Indiana" but instead attempted "to charge [a] violation of certain rules and regulations of the Fire Marshall of Indiana." This was impermissible, we said, because "[t]he legislature cannot delegate its express authority defining criminal responsibility to anyone." 250 Ind. at 124, 235 N.E.2d at 164–65. (As to the assault and battery conviction, our court reversed on grounds that the indictment did not "allege any of the essential elements of assault and battery." 250 Ind. at 125, 235 N.E.2d at 165.)

5. As a matter of federal constitutional law, the U.S. Supreme Court recently revisited these principles in *Whitman v. Am. Trucking Ass'ns*, where the court said, "In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency. Article I, § 1, of the Constitution vests 'all legislative Powers herein granted ... in a Congress of the United States.' This text permits no delegation of those powers." 531 U.S. 457, 472, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). *See Barco*, 595 N.E.2d at 254, for a brief history of federal jurisprudence in this area, including *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).

6. As a general matter, the U.S. Constitution does not *per se* prohibit Congress from delegating to an administrative agency some re-

## III

At issue here is whether the criminal statute under which Defendant was charged gave fair warning that the conduct alleged was proscribed. As set forth *supra*, that statute provides:

[A] person who knowingly or intentionally ... files a Medicaid claim, including an electronic claim, in violation of Indiana Code § 12–15 ... commits Medicaid fraud, a Class D felony.

Ind.Code § 35–43–5–7.1(a)(1).

Defendant points out that while Indiana Code § 12–15 governs the operations of the Medicaid program in Indiana generally, it does not "contain any statute which makes it unlawful to submit claims exceeding a provider's 'usual and customary charge,'" the misconduct alleged. (Br. of Appellant at 15).

The State counters that Ind.Code § 12–15, cross-referenced in Ind.Code § 35–43–5–7.1(a)(1), includes the requirement that "[a] provider who accepts payment of a claim submitted under the Medicaid program is considered to have agreed to comply with the statutes and rules governing the program." Ind.Code § 12–15–21–1. As such, the State contends, Medicaid providers have been told by the Legislature that action contrary to Medicaid rules is forbidden. And, as we have seen, there was a Medicaid rule in place limiting providers of covered legend drugs to their usual and customary charges. Ind. Admin. Code tit. 405 r. 1–6–21.1(g) (1996 & Supp.1997).

While we find the state's argument plausible, we conclude that the link between Ind.Code § 12–15 and the conduct prohibited by the "ordinary and customary charge" regulation is simply too attenuated to permit this prosecution to proceed.

Several venerable due process principles—variously framed as the "void for vagueness doctrine," the "rule of lenity," and the "fair notice requirement"—bring us to this conclusion. "As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discrimi-

sponsibility for defining elements of a criminal offense. *See Touby v. United States*, 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991) (authorized drug prosecution where Attorney General authorized to specify controlled substances on a temporary basis when doing so was "necessary to avoid an imminent hazard to the public safety"); *United States v. Grimaud*, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911) (ruling that Congress acted within its constitutional power in delegating to the Secretary of Agriculture the power to make rules for the lawful use of forest reservations). However, the extent to which administrative rule-making in this regard should be entitled to the deferential standards of review set forth in *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), has been the subject of scholarly debate. *See* Sanford N. Greenberg, *Who Says It's a Crime?: Chevron Deference to Agency Interpretations of Regulatory Statutes That Create Criminal Liability*, 58 U. Pitt. L.Rev. 1 (1996) (arguing that exceptions to *Chevron* deference when courts interpret administrative statutes that are criminally enforceable are not desirable, necessary, or easily administered); Mark D. Alexander, *Note: Increased Judicial Scrutiny for the Administrative Crime*, 77 Cornell L.Rev. 612 (1992) (arguing that courts reviewing challenges to criminal rule-making should consider de novo whether a particular criminal rule falls within the grant of power authorized in Congress's delegation); Cass R. Sunstein, *Law and Administration After Chevron*, 90 Colum. L.Rev. 2071, 2097–2100 (1990) (arguing that when courts interpret administrative statutes that are criminally enforceable, Chevron deference may conflict with the doctrine of lenity, or the canon of strict construction of criminal statutes).

natory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The purpose of the "fair notice" requirement is "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The rule of lenity is premised on two ideas: First, " 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed' "; second, legislatures and not courts should define criminal activity. *United States v. Bass*, 404 U.S. 336, 347–348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931)).

The penal statute at issue here, Ind. Code § 35–43–5–7.1(a)(1), it is true, cross-references Ind.Code § 12–15. But Ind. Code § 12–15 is an entire article of the Indiana Code, covering 50 pages of the 1993 Code and comprising 280 sections organized in 37 chapters.[7] Many of the chapters impose duties on or otherwise speak to the state agency responsible for administering the Medicaid program. Others define the eligibility of, impose duties on, or otherwise speak to individuals who receive Medicaid assistance. Only a portion speak to Medicaid providers. The effect of the statute, then, is to say that a provider is prohibited from filing a Medic-

aid claim "in violation of" nothing more specific than this vast expanse of the Indiana Code. This is not, in our view, "fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed." *Bass*, 404 U.S. at 348, 92 S.Ct. 515 (quoting *McBoyle*, 283 U.S. at 27, 51 S.Ct. 340). Here, to understand what conduct Ind. Code § 35–43–5–7(a)(1) prohibits requires following a cross-reference to Ind.Code § 12–15, then through the 50 pages and 280 sections of that article, and then to the language of an agency regulation in the Indiana Administrative Code. This lacks the "sufficient definiteness" that due process requires for penal statutes.[8] *Kolender*, 461 U.S. at 357, 103 S.Ct. 1855.

We hold that the general reference Ind. Code § 12–15 in Ind.Code § 35–43–5–7.1(a)(1) is too vague in defining the conduct sought to be proscribed to meet the requirements of due process.

### Conclusion

Having previously granted transfer, we summarily adopt the opinion of the Court of Appeals as to the issues referred to in footnotes 1 and 2 and remand this case to the trial court with directions to dismiss the information without prejudice.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

BOEHM, J., concurs with separate opinion in which DICKSON and RUCKER, JJ., concur.

7. The Indiana Code is subdivided into 36 "titles." Each title is further subdivided, first, into "articles," then "chapters," and then "sections." The citation "Ind.Code § 12–15" refers to Article 15 ("Medicaid") of Title 12 ("Human Services").

8. The Legislature itself has shown that it can be much more definite in identifying conduct

for which a Medicaid provider can be held criminally responsible. *See, e.g.,* Ind.Code § 35–43–5–7.1(a)(2) (Supp.1997) (a person commits Medicaid fraud who "obtains payment from the Medicaid program under IC 12–15 by means of a false or misleading oral or written statement or other fraudulent means.").

BOEHM, Justice, concurring.

I agree with the majority that the statutory provisions at issue here are less than models of clarity. One must sift through the many provisions of Indiana Code 12–15 to find the general requirement of section 12–15–21–1 that a Medicaid provider is considered to have agreed to comply with the statutes and rules governing the Medicaid program. One must then look to the Medicaid rules in the Indiana Administrative Code to find that providers are limited to their usual and customary charges when paid by Medicaid. Ind. Admin. Code tit. 405, r. 1–6–21.1(g) (1996). I agree with the majority that a violation of section 7.1(a)(1) is simply too attenuated.

However, subsection (a)(1) is not the only relevant provision under section 7.1. Healthscript was charged in the second amended information with violating Indiana Code section 35–43–5–7.1 without specifying which subsection of that section was violated. Subsection 7.1(a)(2) provides that a person who knowingly or intentionally "obtains payment from the Medicaid program under IC 12–15 by means of a false or misleading oral or written statement or other fraudulent means" commits Medicaid fraud. The conduct alleged in the information was submitting a claim "for amounts exceeding the usual and customary charge which resulted in payments." According to the affidavit for probable cause filed with the information, Healthscript knowingly charged the Medicaid program $181 per 9000 milliliters of sterilized water while it charged private non-Medicaid customers $22.50 and $25 for the same 9000 milliliters of water. One need not have a finely tuned moral compass to know that this conduct constitutes the obtaining of payments from the Medicaid program by means of a false statement. The usual and customary charge requirement was well known in the industry. In my view, given the regulatory scheme, presenting this claim constituted a representation that the $181 price was "usual and customary." There are undoubtedly many situations where the meaning of that phrase is debatable, but this is not one of them. Whatever rubber is in the concept is stretched far beyond the snapping point by a claim of $181 for water sold for $25 to commercial customers. The information charges that the misrepresentation was knowingly made and resulted in payment. If so, in my view, it violated subsection 7.1(a)(2).

In my view, Healthscript's constitutional separation of powers argument—that delegating criminal authority to an administrative agency is improper—becomes a nonissue if this case is viewed as a subsection (a)(2) fraudulent claim case. The administrative regulation does not define the crime. Rather, it is part of the background that renders Healthscript's payment requests false. The prohibited conduct of making a false statement to receive payment is prohibited by subsection (a)(2).

Although I believe a violation of 7.1(a)(2) could have been charged, I concur in the majority opinion because the information did not accomplish that. The charge in the second amended information of a violation of Indiana Code section 35–43–5–7.1 was obviously not clear in alleging a violation of subsection (a)(2). The State itself focuses on Healthscript's conduct as a violation subsection (a)(1).[9] In addition, the

---

9. The State quotes subsections (a)(1), (a)(2), and (a)(5), but makes no argument focusing on either (2) or (5). Rather it contends, "This statute makes it a crime to knowingly or intentionally file a Medicaid claim in violation of Indiana Code 12–15" and "To be guilty of Medicaid Fraud, a provider must knowingly or intentionally file a claim in violation of Title 12, Article 15." Both seem to point to a claim of a subsection (1) violation.

parties appear to have stipulated on appeal that the charge was under subsection (a)(1).

For these reasons, I would find that the charging information did not charge a violation of (a)(2) with sufficient clarity. *See Moran v. State,* 477 N.E.2d 100, 104 (Ind. Ct.App.1985) (finding that a count in the indictment failed the specificity test by failing to restrict the allegations to a violation of a particular subsection of a statute). The accused has the right to require that the allegations contained in the charging instrument state the crimes charged with sufficient certainty to enable the accused to anticipate the evidence adduced against him at trial, thereby enabling him to marshal evidence in his defense. *Harwei, Inc. v. State,* 459 N.E.2d 52, 56 (Ind.Ct.App. 1984). "The indictment must state the crime charged in direct and unmistakable terms." *Moran,* 477 N.E.2d at 103–04. Any reasonable doubt as to the offense charged must be resolved in favor of the accused. *Id.* Simply charging Healthscript with conduct that contravenes a statute without specifying the violated subsections is insufficient specificity in the charging information.

DICKSON and RUCKER, JJ., concur.