ATTORNEYS FOR PETITIONER:
**DAVID E. PRICE**
**ADRIA S. PRICE**
PRICE & ASSOCIATES, LLC
Santa Claus, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA R. GASTINEAU**
**EVAN W. BARTEL**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
Jun 23 2016, 4:35 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

RDM SALES AND SERVICE, INC., )
)
Petitioner, )
)
v. ) Cause No. 82T10-1001-TA-00003
)
INDIANA DEPARTMENT OF )
STATE REVENUE, )
)
Respondent. )

## ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**June 23, 2016**

WENTWORTH, J.

RDM Sales and Service, Inc. has appealed the Indiana Department of State Revenue's assessments of Indiana sales tax, interest, and penalties for the 2006, 2007, and 2008 tax years ("years at issue"). The matter is currently before the Court on the Department's motion for summary judgment in which it claims that all of RDM's vending machine sales and cafeteria sales are subject to sales tax and negligence penalties. The Department's motion is granted in part and denied in part.

**FACTS AND PROCEDURAL HISTORY**

The following facts are not in dispute. RDM is an Indiana corporation located in Ferdinand, Indiana. (Second Jt. Stip. Facts ¶ 1.) During the years at issue, RDM operated and serviced vending machines, sold food through vending machines, and operated two cafeterias at business locations owned by third parties. (Second Jt. Stip. Facts ¶ 2.)

The Department audited RDM and determined that RDM failed to report all vending machine and cafeteria food sales that were subject to sales tax during the years at issue. (First Jt. Stip. Facts ¶¶ 1-2.) Accordingly, on April 21, 2009, the Department issued Proposed Assessments of sales tax, interest, and penalties to RDM. (First Jt. Stip. Facts ¶ 4.)

On June 5, 2009, RDM filed a protest, and the Department held an administrative hearing on October 8, 2009. (First Jt. Stip. Facts ¶¶ 5-6.) On October 19, 2009, the Department issued its Letter of Findings denying RDM's protest. (First Jt. Stip. Facts ¶ 7.)

On January 8, 2010, RDM filed this original tax appeal. The Department filed a motion for summary judgment on October 23, 2013, designating, among other things, its Proposed Assessments as evidence. On December 13, 2013, RDM filed its response. The Court held a hearing on February 27, 2014. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule

56(C). "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party[.]" T.R. 56(B).

When, as here, the Department has moved for summary judgment, it may make a prima facie showing that there is no genuine issue of material fact regarding the validity of the unpaid tax by properly designating its Proposed Assessments as evidence. See Indiana Dep't of State Revenue v. Rent-A-Center E., Inc., 963 N.E.2d 463, 466-67 (Ind. 2012). "The burden then shifts to the taxpayer to come forward with sufficient evidence demonstrating that there is, in actuality, a genuine issue of material fact with respect to the unpaid tax[.]" Id. at 467.

## LAW

Indiana imposes sales tax on retail transactions made in Indiana. See IND. CODE § 6-2.5-2-1(a) (2006). A retail transaction is defined as the transfer of tangible personal property acquired for the purpose of resale to another for consideration. See IND. CODE §§ 6-2.5-1-2; -4-1 (2006). Indiana's Legislature has, however, exempted from sales tax certain retail transactions that involve the sale of food for human consumption:

> (a) Sales of food and food ingredients for human consumption are exempt from [sales tax].

> (b) For purposes of this section, the term "food and food ingredients for human consumption" includes the following items if sold without eating utensils provided by the seller:

> * * * * *

> (2) Food sold in an unheated state by weight or volume as a single item.

> (3) Bakery items, including bread, rolls, buns, biscuits, bagels, croissants, pastries, donuts, danish, cakes, tortes,

3

pies, tarts, muffins, bars, cookies, and tortillas.

(c) Except as otherwise provided by subsection (b), for purposes of this section, the term "food and food ingredients for human consumption" <u>does not include:</u>

* * * * *

(4) food sold through a vending machine;

(5) food sold in a heated state or heated by the seller;

(6) two (2) or more food ingredients mixed or combined by the seller for sale as a single item (other than food that is only cut, repackaged, or pasteurized by the seller, and eggs, fish, meat, poultry, and foods containing these raw animal foods requiring cooking by the consumer as recommended by the federal Food and Drug Administration in chapter 3, subpart 3-401.11 of its Food Code so as to prevent food borne illnesses); [and]

(7) food sold with eating utensils provided by the seller, including plates, knives, forks, spoons, glasses, cups, napkins, or straws (for purposes of this subdivision, a plate does not include a container or packaging used to transport the food)[.]

IND. CODE § 6-2.5-5-20(a), (b)(2)-(3), (c)(4)-(7) (2006) (amended 2010) (emphases added).

## ANALYSIS

In response to the Department's designated <u>prima</u> <u>facie</u> evidence that its assessments are correct, RDM has presented designated evidence that raises three issues. First, RDM claims the Department should be estopped from imposing sales tax on any of its bottled water and fruit juice provided through its vending machines or alternatively, that a portion of these same items is not subject to sales tax because they were dispensed free of charge or at a discounted rate to exempt customers. Second, RDM claims that its sales of certain cafeteria food items were exempt as food for human

4

consumption.  Finally, RDM claims that it had reasonable cause not to collect and remit sales tax on the assessed transactions; thus, the Department's negligence penalties should be waived.

## I. Bottled water and fruit juice

The Department claims that there is no genuine issue of material fact that RDM sold bottled water and fruit juice from vending machines; therefore, these sales are subject to sales tax as a matter of law.  (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 4-6.)  RDM admits it sold bottled water and fruit juice from its vending machines, but asserts that those transactions were not taxable sales because:  A) the Department should be estopped from assessing tax because its 2004 Sales Tax Clarification expressly excluded sales of these types of items from sales tax; B) the imposition of sales tax on vending machine food sales and not on grocery/convenience store food sales violates the Equal Privileges and Immunities Clause of Indiana's Constitution and the Equal Protection Clause of the United States Constitution; and C) the Proposed Assessments improperly included bottled water and fruit juice dispensed free of charge or at a discounted rate to exempt customers.  (See Pet'r Br. Supp. Resp. Opp'n Resp't Mot. Summ. J. ("Pet'r Br.") at 5-21.)

## A. Estoppel

In January of 2004, RDM received a document entitled "Sales Tax Clarification" from the Department.  (See Pet'r Des'g Evid., Ex. A; Pet'r Br. at 6.)  It stated:

> [t]here are several items that were previously taxed that are no longer taxable items.  Ice and bottled water are no longer taxable.  Soft drinks are still taxable, but the taxability is based on whether the beverage contains natural or artificial sweeteners, not whether it is a carbonated beverage.  A beverage that contains more than fifty percent (50%)

5

vegetable or fruit juice by volume is exempt.

(Pet'r Des'g Evid., Ex. A at 2.) RDM explains that it "reasonably relied upon the Sales Tax Clarification in not collecting sales tax on the vending machine sales of bottled water and fruit juices during the years [at] issue." (Pet'r Br. at 12.) Accordingly, RDM claims the Department should be estopped from subjecting its vending machine sales of bottled water and fruit juice to sales tax. (See Pet'r Br. at 12-15.)

Estoppel is an equitable remedy that requires "(1) a representation or concealment of material fact; (2) made by a person with knowledge of the fact and with the intention that the other party act upon it; (3) to a party ignorant of the fact; (4) which induces the other party to rely or act upon it to his detriment." Hi-Way Dispatch, Inc. v. Indiana Dep't of State Revenue, 756 N.E.2d 587, 598 (Ind. Tax Ct. 2001) (citation omitted). Generally, estoppel is not applied against government entities unless the party seeking estoppel identifies an important public policy reason that outweighs the public policy supporting the denial of estoppel against the government. See id. at 598-99. Thus, for estoppel to apply in this case, RDM must show that all the elements are met and provide an important public policy reason to apply the doctrine to the Department.

RDM has not demonstrated the elements of estoppel, nor could it do so, because its estoppel claim is based on its misreading of the Department's Clarification. The Clarification stated that sales of bottled water and fruit juice generally are no longer taxable, but it does not address sales of those items from vending machines. (See Pet'r Des'g Evid., Ex. A at 2.) Moreover, the Clarification states:

> **NOTE:** **For a more thorough explanation of the Streamlined Sales Tax provisions, see Commissioner's**

6

**Directive #21. For more detail concerning the taxability of food items and a list of taxable and exempt items, see Sales Tax Information Bulletin #29, available through our website at: www. IN.gov/dor/publications. In addition, for more detailed information regarding installation and delivery charges, please see Commissioner's Directive #22.**

(Pet'r Des'g Evid., Ex. A at 2.) Had RDM heeded this notice, it would have understood that all sales from vending machines, regardless of the type of item, are taxable. See Indiana Dep't of State Revenue, Information Bulletin #29 (Jan. 1, 2004) (available at http://www.in.gov/legislative/iac/showIRArchive); Indiana Dep't of State Revenue, Commissioner's Directive #21 (Jan. 1, 2004) (available at http://www.in.gov/legislative/iac/showIRArchive). See also I.C. § 6-2.5-5-20(c)(4) (explaining that food sold through a vending machine is not exempt). Thus, the Department's Clarification simply did not represent an absolute bar against taxing all sales of bottled water and fruit juice; those items were taxable if they were sold through a vending machine. See also Taxpayers Lobby of Ind., Inc. v. Orr, 311 N.E.2d 814, 818 (Ind. 1974) (recognizing that "[t]he sales tax law has always contained exemptions based not only on the identity of the tangible personal property sold . . . but also on the nature of the transaction").

RDM has not shown that the Department, through its Clarification, intended to induce RDM to stop collecting sales tax on its vending machine sales of bottled water and fruit juice to its detriment. Moreover, RDM has not identified any important public policy reason that might outweigh policy reasons against asserting estoppel against governmental entities. (See Pet'r Br. at 12-15.) Consequently, RDM's estoppel argument fails.

7

## B. Equal Privileges and Immunities and Equal Protection Clause

Next, RDM claims that taxing vending machine food sales and not grocery/convenience store food sales violates the Indiana Equal Privileges and Immunities Clause (Section 23)[1] and the Equal Protection Clause of the United States Constitution.[2] (See Pet'r Br. at 15-21.) These identical claims, however, were previously rejected by this Court. See J&J Vending, Inc. v. Indiana Dep't of State Revenue, 673 N.E.2d 1203, 1206-08 (Ind. Tax Ct. 1996) (finding that the disparate tax treatment was reasonably related to differences inherent in the nature of the two types of food sales, was consistently applied within each separate classification, and that the classifications were properly distinct because the two types of sales were not "in all relevant respects alike"). Nevertheless, RDM asserts that J&J Vending is not binding precedent because "(n)either the new law [i.e., the 2004 version of Indiana Code § 6-2.5-5-20] nor the new reality of the marketplace has been subjected to judicial scrutiny." (Pet'r Br. at 8.)

### 1. The 2004 Statute

The 1996 version of Indiana Code § 6-2.5-5-20 considered in J&J Vending

---

[1] The Indiana Equal Privileges and Immunities Clause states "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. 1, § 23.

[2] The Equal Protection Clause of the United States Constitution states that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend XIV, § 1.

excluded "food sold through a vending machine [] or by a street vendor" from the exemption; whereas, the 2004 version of the statute excludes only "food sold through a vending machine" from the exemption. Compare IND. CODE § 6-2.5-5-20(c)(11) (1996) with IND. CODE § 6-2.5-5-20(c)(4) (2004). RDM argues that discrimination against the vending machine industry is more pronounced in the 2004 statute because "vending machine sales of food are the only sales [based on the nature of the transaction that are] expressly taxed all of the time." (Pet'r Br. at 9-10.) Simply eliminating street vendors from the statute, however, does not lessen the precedential value of J&J Vending. The J&J Vending rationale is equally applicable to both statutes: that the disparate tax treatment is reasonably related to inherently different effects each type of sale has on the regressive nature of imposing sales tax on food. See J&J Vending, 673 N.E.2d at 1207-08.

### 2. The New Marketplace

RDM also claims that, during the years at issue, the preferential tax treatment afforded to grocery/convenience store food sales has become constitutionally infirm because those sales are now similarly situated to vending machine food sales, ending any basis for separate classifications. (See Pet'r Br. at 15-21.) As support for this claim, RDM argues that a) vending machines and grocery/convenience stores sell the same items; b) vending machines and grocery/convenience stores are now direct competitors; and c) recent case law changed the legal landscape on which J&J Vending was decided.

### a)

RDM claims that because vending machines and grocery/convenience stores

9

now sell the same items, the preferential tax treatment afforded to grocery/convenience stores is unconstitutional.  (See Pet'r Br. at 15-21.)  RDM explains:

> Today, vending machines dispense far more than simply single-serving prepackaged items, such as snacks.  Vending machines distribute products that can be used to make a meal including breakfast, lunch and dinner items.  There are vending machines that are set up solely to distribute soft drinks and other carbonated beverages while some only distribute bottled water or snacks.   There are vending machines that distribute DVD rentals, fish bait, iPods, diapers, shampoo, conditioner and other personal hygiene products. Virtually any product that is available on a grocery or convenience store shelf is also available via a vending machine.

(Pet'r Br. at 16.)  Moreover,

> Virtually all grocery stores now contain miniature refrigerators located at or near the check-outs that contain chilled beverages similar to the chilled beverages that are available through a vending machine.  Many grocery stores also offer self-checkout.  Grocery stores provide the same single-serving, prepackaged items located in a vending machine to include miniature packages of chips, candy bars, chewing gum, and prepackaged meals to go.

(Pet'r Br. at 17.)

RDM ostensibly intended to illustrate that because staple food items are now sold from vending machines and single-serving, prepackaged items are sold from grocery/convenience stores, "the purely mechanical distinction between a vending machine and a grocery store . . . [has] no rational basis [for] taxing sales from a vending machine while exempting sales from a grocery store."  (Pet'r Br. at 17.)  RDM, however, has failed to provide any probative evidence in support of its purported facts.  RDM did not cite to affidavits, stipulations, or any other evidence; rather, it presented merely conclusory arguments.  (Compare T.R. 56(C) with Pet'r Br. at 15-21.)  Accordingly, the

10

Court cannot consider RDM's unsupported claim.

**b)**

In an argument not before the Court in J&J Vending, RDM also claims that unequal tax treatment based on the nature of the transaction or its method of distribution is unconstitutional because vending machine and grocery/convenience store sales are now similarly situated competitors. (See Pet'r Br. at 9, 18-19.) To that end, RDM designated as evidence an eighty-eight page study entitled "Exploring Consumer Attitudes and Usage of Vending," prepared in April 2010 by Synovate Ltd. for Healy & Schulte, a vending machine industry trade association. (See generally Pet'r Des'g Evid., Ex. 6.) The study examines attitudinal and behavioral differences between vending machine users and non-users by generation groups. (See generally Pet'r Des'g Evid., Ex. 6 at 3.) The study narrowly focused on vending machine sales of single-serving, prepackaged items such as candy, snacks, and cold beverages rather than more broadly to include the staple food items upon which the J&J Vending decision concentrated in evaluating the impact on regressivity. (Compare Pet'r Des'g Evid., Ex. 6 at 9, 12-14 with J&J Vending, 673 N.E.2d at 1207-08.) In any event, RDM did not direct the Court's attention to specific lines, pages, or sections of the study and failed to weave the relevant parts of the study into its legal analysis. See Miller Pipeline Corp. v. Indiana Dep't of State Revenue, 995 N.E.2d 733, 735-36 (Ind. Tax Ct. 2013) (explaining that a proper designation should include a specific reference to the relevant portion of the document and an explanation as to why those specifically designated facts are material). So, this argument fails.

11

**c)**

Finally, RDM argues that the legal landscape on which J&J Vending was decided has changed, thereby obliging the Court to reconsider whether vending machine food sales and grocery/convenience food sales are in the same classification. (See Hr'g Tr. at 44.) RDM explains that J&J Vending decided that vending machine food sales and grocery/convenience food sales were not in the same classification using the two-part test enunciated in Collins v. Day, 644 N.E.2d 72 (Ind. 1994). (See Pet'r Br. at 15-19; Hr'g Tr. at 46.) Since then, however, RDM claims the Supreme Court has changed the analysis of Section 23 announced in Collins. (See Hr'g Tr. at 44 (referring to Paul Stieler Enterprises, Inc. v. City of Evansville, 2 N.E.3d 1269, 1273-78 (Ind. 2014)).) RDM did not, however, explain how Stieler changed the law that existed when J&J Vending was decided. (See Hr'g Tr. at 44-49.) Moreover, the Court reads the Stieler case as applying the same two-step Collins analysis as J&J Vending, leaving the legal landscape unchanged. Compare J&J Vending, 673 N.E.2d at 1207 with Stieler, 2 N.E.3d at 1273. Accordingly, the Court follows the binding precedent of J&J Vending that the disparate tax treatment of vending machine versus grocery/convenience store sales is based on inherent differences of the two separate classifications and does not violate either Indiana's Equal Privileges and Immunities Clause or the federal Equal Protection Clause. See Emerson v. State, 812 N.E.2d 1090, 1099 (Ind. Ct. App. 2004) (explaining that "[t]he doctrine of stare decisis states that, when a court has once laid down a principle of law as applicable to a certain set of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same").

**C. Free and Discounted Bottled Water and Fruit Juice**

RDM alternatively claims that, in the event the Department is not estopped from imposing sales tax, it improperly assessed the portion of its bottled water and fruit juice dispensed free of charge or at a discounted rate to exempt customers. (See Pet'r Br. at 21.) In support, RDM designated as evidence the affidavit of Robert Schlachter, its president and owner, who stated that RDM dispensed a portion of its bottled water and fruit juice free or at a discounted price. (See Pet'r Des'g Evid., Ex. 5 ¶¶ 2, 9.) The Department responds 1) that RDM has not shown that its "Free Vend" transactions were included in the Proposed Assessments, 2) that Schlachter's testimony is merely conclusory, and 3) that the exhibits to Schlachter's affidavit were not properly designated. (See Resp't Reply Pet'r Resp. Br. ("Resp't Reply Br.") at 10-12.)

First, the Department cannot claim that RDM failed to show that its "Free Vend" transactions were included in the Proposed Assessments because it has acknowledged that its Auditor "made adjustments to treat all sales of vending machine receipts as subject to sales tax[.]" (See First Jt. Stip. Facts ¶ 2 (referring to Ex. 1 at 4 (emphasis added)).) Accordingly, the Department included the receipts from RDM's free and discounted bottled water and fruit juice in its Proposed Assessments.

Second, the Department maintains that the portions of Schlachter's affidavit upon which RDM relies must be disregarded for purposes of summary judgment because they contain only conclusory facts. (See Resp't Reply Br. at 10-11.) The cited portions of Schlachter's affidavit, however, contain more than mere conclusions. For example, Schlachter averred that he informed the auditor that a portion of the bottled water and fruit juice was dispensed free of charge or at a discounted rate, but the auditor "disregarded [his] argument and stated that all sales through a vending machine were

13

subject to sales tax regardless of the sales tax exempt status of the purchaser." (Pet'r Des'g Evid., Ex. 5 ¶ 10 (emphasis added).)  This testimony does not draw factual conclusions, but recounts conversations between the affiant and the Auditor.  Moreover, Schlachter supported his testimony by referring to the exhibits attached to his affidavit that contained copies of customers' exemption certificates and invoices for its "Free Vend." (See Pet'r Des'g Evid., Exs. 5 ¶¶ 8-9, B, C.)

Finally, the Department contends that RDM did not properly designate the attached exhibits because it did not refer to them in specific part.  (See Resp't Reply Br. at 11.)  RDM properly designated the two exhibits in their entirety, however, because every part of each exhibit was necessary to meet its burden to establish that the bottled water and fruit juice dispensed free of charge or at a discounted rate to exempt customers was not taxable.  (See Pet'r Des'g Evid., Ex. B (containing all the exemption certificates from RDM's exempt customers), Ex. C (containing all the invoices for the "Free Vend" transactions).)  Accordingly, RDM's designation of the attached exhibits does not run afoul of the specificity rule.  See Filip v. Block, 879 N.E.2d 1076, 1081 (Ind. 2008) (explaining that Trial Rule 56(C) requires sufficient specificity to identify the relevant portions of a document relied upon).  Consequently, all RDM's transactions providing bottled water and fruit juice free of charge or at a discounted rate to exempt customers are not subject to sales tax and must be removed from the Proposed Assessments.

## II. Cafeteria Sales

The second issue for the Court to decide is whether RDM's sale of certain cafeteria food items are subject to Indiana sales tax under Indiana Code § 6-2.5-5-

14

20(c).  The Department claims that RDM's cafeteria sales are subject to sales tax because RDM sold heated food and food for immediate consumption.  (See Resp't Br. at 6-7.)  RDM has stipulated that it sold heated food in its cafeterias.  (See Second Jt. Stip. Facts ¶ 3.)  Thus, RDM's sales of heated food are subject to sales tax.  See I.C. § 6-2.5-5-20(c)(5) (stating that food sold in a heated state or heated by the seller is expressly excluded from the food for human consumption sales tax exemption).  Nonetheless, RDM claims that three other types of its cafeteria food sales are not taxable:  A) bakery items it sold to customers without providing eating utensils; B) food that it has cut, repackaged, or pasteurized alone and raw animal foods requiring cooking by the consumer in order to prevent food borne illnesses; and C) food for immediate consumption not sold from its own premises.[3]  (See Pet'r Br. at 22-23.)

**A.  Bakery Items Sold Without Eating Utensils**

RDM contends the bakery items it sold are not taxable because it did not supply them with eating utensils.  (See Pet'r Br. at 22-23.)  See also I.C. § 6-2.5-5-20(b)(3) (stating that bakery items sold without eating utensils provided by the seller are exempt).  As support, RDM again relied on Schlachter's affidavit that states that RDM did not supply eating utensils in its cafeterias.  (See Pet'r Des'g Evid., Ex. 5 ¶ 14.)

In rebuttal, the Department contends that the Court should disregard Schlachter's affidavit because RDM's petition states that at the time the bakery items were sold, utensils were provided, not by RDM, but by the cafeteria owners.  (See Hr'g Tr. at 23.)

_____

[3]  During the hearing, RDM's attorney argued that RDM was not given full credit for the sales tax it collected on its cafeteria sales.  (See Hr'g Tr. at 64.)  RDM, however, failed to designate any evidence to support this claim.  The Court, therefore, will not consider this argument.  See Freson v. Combs, 433 N.E.2d 55, 59 (Ind. Ct. App. 1982) (explaining that unsworn commentary of an attorney, briefs, and unsworn statements will not be considered for purposes of summary judgment).

The Department, however, did not designate which part of the 15 page petition it relied on despite the requirement that a movant designate "to the Court all parts of the pleadings . . . on which it relies" to show that RDM provided eating utensils. (Compare T.R. 56(C) with Resp't Br.; Resp't Reply Br.) See also Filip, 879 N.E.2d at 1081 (explaining that page numbers are usually sufficient to meet the specificity requirement of Indiana Trial Rule 56(C)). Accordingly, Schlachter's affidavit raises the genuine issue of material fact of whether and by whom eating utensils were provided and is sufficient to preclude summary judgment in favor of the Department on this issue. See Hughley v. State, 15 N.E.3d 1000, 1004 (Ind. 2014) (explaining that a sworn affidavit is sufficient to raise a factual issue to be resolved at trial, and thus defeat a summary-judgment motion).

## B. Food Cut, Repackaged, or Pasteurized & Raw Food Requiring Cooking

Next, RDM acknowledges that while sales of food in which a seller combines two or more food ingredients as a single item are generally taxable, sales are not taxable if a seller just cuts, repackages, or pasteurizes the ingredients, or sells raw animal foods requiring cooking by the consumer to prevent food borne illnesses. (See Pet'r Br. at 22-23 (citing I.C. § 6-2.5-5-20(c)(6)).) RDM maintains that its food combined for sale as a single item meets the exception. (See Pet'r Br. at 23.) In support, Schlachter's affidavit averred that RDM combined two or more food ingredients for sale as a single item after only cutting, repackaging, or pasteurizing or sold raw animal foods that required cooking by the consumer to prevent food borne illness as recommended by the Food and Drug Administration. (See Pet'r Des'g Evid., Ex. 5 ¶ 14.)

The Department did not cite to any designated evidence to rebut Schlachter's

affidavit. (See generally Resp't Br.; Resp't Reply Br.) Instead, the Department argued that Schlachter made only conclusory allegations that should not be considered. (See Resp't Reply Br. at 12-13.) Schlachter's affidavit, however, contained sworn testimony based on personal knowledge contradicting the Department's prima facie case that RDM's sales of combined food ingredients for sale as a single item are taxable. Consequently, Schlachter's affidavit is sufficient to raise a genuine issue of material fact and preclude summary judgment for the Department on this issue. See Hughley, 15 N.E.3d at 1004.

## C. Sales of Food For Immediate Consumption

The Department's regulation explaining the exemption for food for immediate consumption states in relevant part:

> Sales of food which ordinarily is [sic.] sold for immediate consumption at or near the premises of the seller are taxable even though such food is sold on a "take-out" or "to go" order basis and is actually bagged, packaged, or wrapped and taken from the premises of the seller. Where and when the customer actually eats such food is immaterial.

45 IND. ADMIN. CODE 2.2-5-43(a) (2006) (see http://www.in.gov/legislative/iac/) (emphasis added). RDM maintains that under this regulation, its sales are not taxable because it "merely operated the cafeterias . . . [at] Perdue Farms and Farbest Foods, Inc. [ and] did not own or otherwise have an interest in those premises." (Pet'r Br. at 23.)

The plain meaning of the regulatory language "premises of the seller" does not imply the premises must be owned by the seller. The word "premises" refers to "the place of business of an enterprise" without limiting the term by ownership. See WEBSTER'S THIRD NEW INT'L DICTIONARY 1789 (2002 ed.). If the Department had

17

intended such a limitation, it could have done so by defining "premises" as "<u>owned by the seller</u>" rather than "of the seller." See <u>SAC Fin., Inc. v. Indiana Dep't of State Revenue</u>, 24 N.E.3d 541, 547 (Ind. Tax Ct. 2014) (explaining that because statutory language is deemed intentionally chosen, the Court will not alter a statute's meaning by reading in language to correct supposed omission) <u>review denied</u>; <u>Garcia v. State Bd. of Tax Comm'rs</u>, 694 N.E.2d 794, 799 (Ind. Tax Ct. 1998) (explaining that administrative regulations are subject to the same rules of construction as statutes). Accordingly, RDM's cafeteria sales of food for immediate consumption are not exempt under Indiana Code § 6-2.5-5-20 and are subject to sales tax.

### III. Penalties

RDM finally claims that the Department must waive its negligence penalties because RDM had reasonable cause to rely upon the Clarification that its sales of bottled water and fruit juice were not taxable. (<u>See</u> Pet'r Br. at 23-25.) The Department must waive a penalty if the taxpayer shows that "the [tax] deficiency determined by the department was due to reasonable cause and not due to willful neglect[.]" IND. CODE § 6-8.1-10-2.1(d) (2006). "In order to establish reasonable cause, the taxpayer must demonstrate that it exercised ordinary business care and prudence in carrying out or failing to carry out a duty giving rise to the penalty imposed[.]" 45 IND. ADMIN. CODE 15-11-2(c) (2006) (see http://www.in.gov/legislative/iac/). Moreover,

> "Negligence" on behalf of a taxpayer is defined as the failure to use such reasonable care, caution, or diligence as would be expected of an ordinary reasonable taxpayer. Negligence would result from a taxpayer's carelessness, thoughtlessness, disregard or inattention to duties placed upon the taxpayer by the Indiana Code or department regulations. Ignorance of the listed tax laws, rules and/or regulations is treated as negligence. Further, failure to read

18

and follow instructions provided by the department is treated as negligence. Negligence shall be determined on a case by case basis according to the facts and circumstances of each taxpayer.

45 I.A.C. 15-11-2(b).

As previously explained, RDM acted unreasonably by relying on the Clarification to stop collecting and remitting tax on its sales of bottled water and fruit juice from its vending machines. See supra pp. 6-7. The Clarification did not address sales made through vending machines; it directed taxpayers to seek additional information on the taxability of food items, and in addition, the relevant legal precedent plainly declared all sales of food through vending machines taxable. See supra pp. 6-7. RDM's extreme action of adjusting its software to stop collecting tax shows only that RDM relied on its understanding of the Clarification, not that its understanding was reasonable. (See Pet'r Des'g Evid., Ex. 5 ¶ 5.) A reasonable taxpayer exercising ordinary business care and prudence would not be likely to risk substantial interest and penalties by altering a tax position based on an informal Department publication without investigating more fully. The Court therefore finds that the Department may properly impose negligence penalties.

## CONCLUSION

For the above-stated reasons, the Court GRANTS summary judgment in favor of the Department and against RDM as to 1) the imposition of sales tax on bottled water and fruit juice sold from vending machines; 2) the imposition of sales tax on heated food and food for immediate consumption that RDM sold in its two cafeterias; and 3) the propriety of the penalties imposed against RDM. The Court GRANTS summary judgment in favor of RDM and against the Department, however, as to the imposition of

19

sales tax on bottled water and fruit juice dispensed from vending machines free of charge or at a discounted rate to exempt customers. The Court also finds there are genuine issues of material fact that cannot be resolved on summary judgment regarding 1) whether and by whom eating utensils were provided with the sale of bakery items; and 2) whether RDM sold two or more food ingredients as a single item that it merely cut, repackaged, or pasteurized, or whether it sold raw animal foods that required cooking by the consumer to prevent food borne illness. Accordingly, the Court will direct the parties regarding the issues remaining for trial under separate cover.

SO ORDERED this 23rd day of June 2016.

_____
Martha Blood Wentworth
Judge, Indiana Tax Court


<u>DISTRIBUTION</u>:  David E. Price, Adria Price, Jessica R. Gastineau, Evan W. Bartel